JACQUES ROSTAIN *v.* HANA ROSTAIN
(13697)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued November 9, 1989—decision released February 13, 1990

*Robert M. Wechsler,* with whom, on the brief, was *Michael Jon Barbarula,* for the appellant (defendant).

*Michael A. Meyers,* with whom, on the brief, was *Patricia C. Reath,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. This is an appeal from certain orders concerning the judgment by the trial court, *Bassick, J.,* dissolving the parties' marriage. The defendant wife contends, inter alia, that the trial court erred in (1) finding certain facts concerning the distribution of property, both real and personal,[1] and (2)

_____

[1] The defendant contends that the property distribution was tainted by the trial court's having committed clear error in making the following findings of fact: (1) that neither party was responsible for the breakdown of the marriage; (2) that the plaintiff purchased the Stamford condominium and dock solely with funds inherited from his father; (3) that all of the nonin-

refusing to award her periodic alimony pursuant to General Statutes § 46b-82.[2] Because we remand this case for further articulation of the court's factual findings, we do not need to address the defendant's other claims of error.

The parties were first married in 1958. As a result of this marriage, the parties had two children. This marriage was terminated by a Mexican divorce on April 14, 1966. The parties, however, remarried on December 18, 1968. At the time of the parties' first divorce, they had no assets other than a rent controlled apartment in New York City which had been awarded to the defendant by the Mexican decree.

The plaintiff husband instituted an action to dissolve the second marriage on December 15, 1986. The defendant wife filed a cross complaint seeking a dissolution, alimony, equitable distribution and other relief. The case proceeded to trial on June 14, 1988, and occupied approximately five days. Both parties testi-

herited assets were totally or substantially purchased by the plaintiff from his own funds; and (4) that certain personal property in fact existed or was in the defendant's possession.

[2] General Statutes § 46b-82 provides: "(Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

fied at the trial. On September 14, 1988, the trial court, *Bassick, J.,* filed an extensive and complex memorandum of decision that sets forth its findings of fact concerning the parties' personal and financial status, as well as the court's orders of property distribution. The court specifically found that neither party was at fault for the breakdown of the marriage and also concluded that no periodic alimony was to be awarded to either party. According to the financial affidavits of the parties, the trial court was presented with crafting its orders in the context of net assets totaling approximately two million dollars. On September 23, 1988, the defendant moved to open and vacate the judgment and for reargument. The trial court, *Thim, J.,* denied the defendant's motion, and from that denial, as well as from the original judgment, the defendant appealed to the Appellate Court.[3] Pursuant to Practice Book § 4023, we transferred the case to this court.

The defendant contends that certain factual findings by the trial court are not supported by the evidence. In particular, the defendant claims that the trial court's finding that a condominium and dock in Stamford were "inherited, gifted or acquired with inherited funds by the plaintiff" was clearly erroneous. The trial court found that this asset had a value of $300,000. The defendant asserts that only one half of the condomin-

___

[3] The defendant's last claim of error challenges the propriety of Judge Thim's ruling on the defendant's motion to open and vacate the judgment and for reargument. Following the trial before Judge Bassick and his memorandum of decision on this matter, Judge Bassick became ill and was absent from the bench for some time. Judge Thim heard and denied the defendant's motion during that period. The defendant contends that the motion should have been heard by Judge Bassick and that it was improper for another judge to hear and decide such motion where the trial judge's term of office had not expired and the judge had not retired because of disability and had not died or resigned during the pendency of this case. General Statutes § 51-183 (f). During oral argument before this court, the defendant's attorney abandoned this issue; therefore, we will not address it.

ium and dock was purchased with funds inherited by the plaintiff and that the other half was purchased with funds accumulated during their marriage.

General Statutes § 46b-81[4] confers broad powers upon the trial court in the assignment of property in a dissolution action. It provides in part that the court "may assign to either the husband or wife all or any part of the estate of the other." General Statutes § 46b-81 (a). Among the factors to be considered in any order entered under § 46b-81 is the "contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-81 (c). Moreover, we have held that the trial court, in a dissolution action, has wide discretion in assigning the property to be transferred.

---

[4] General Statutes § 46b-81 provides: "(Formerly Sec. 46-51). ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

*Schmidt* v. *Schmidt,* 180 Conn. 184, 192, 429 A.2d 470 (1980); *LaBella* v. *LaBella,* 134 Conn. 312, 317–18, 57 A.2d 627 (1948). In the present case, the trial court found that "[t]he following assets were inherited, gifted or acquired with inherited funds by the plaintiff: Limited partnership interest—590 West End Avenue, New York City, New York, $160,000.00; Punta Del Este, Uruguay—$65,000.00; Condominium, Stamford, Ct. and dock—$300,000; Cie de Banque, Geneva, Switzerland—$121,835.00; Certain antiques, furnishings and paintings." The trial court, however, did not articulate any basis in fact for its findings nor did the defendant file a motion for articulation of the trial court's decision pursuant to Practice Book § 4051. After a careful review of the record, we are uncertain whether the trial court found that the condominium and dock were entirely or partly "inherited, gifted or acquired with inherited funds by the plaintiff." Depending on how that question is resolved, a further question then arises as to the effect of that finding on the court's overall property distribution. It is apparent that articulation by the trial court is necessary.

Fairness requires that we set out the considerations, evident to this court from the record, that create that lack of clarity for which we order a further articulation. In doing so, we point out, as we have in the past in domestic relations cases, that we cannot retry the case. See, e.g., *Cookson* v. *Cookson,* 201 Conn. 229, 243, 514 A.2d 323 (1986); *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982); *Yontef* v. *Yontef,* 185 Conn. 275, 278–79, 440 A.2d 899 (1981); *Lucy* v. *Lucy,* 183 Conn. 230, 232–33, 439 A.2d 302 (1981); *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980). As the defendant points out, the plaintiff's own "Claims for Relief" clearly state that only one half of the purchase price of the condominium and dock, i.e., $150,000, was

paid with inherited funds.[5] In further support of her claim, the defendant refers to the following evidence: The plaintiff testified that one half of the money paid for the condominium came from a Swiss bank account and the other half came from his account at Chemical Bank in New York; the plaintiff inherited from his father in 1979 a Swiss bank account valued at approximately $220,000; and the account, at its peak, increased to approximately $350,000. The plaintiff further testified, the defendant continues, that he withdrew from that account $65,000 for property in Uruguay, $125,000 for taxes, *$150,000 to pay for the condominium,* and $5000 for expenses. These withdrawals total $345,000. She maintains that he also testified that he never added any of his own funds to the account. Thus, the defendant claims that the evidence supports a finding that only $150,000 of the purchase price of the Stamford condominium and dock was paid for by the plaintiff with inherited funds.

The defendant further claims that the balance, i.e., $150,000, of "the condominium purchase came from the Chemical account by liquidation of stocks and bonds that were not inherited, but were accumulated during the marriage." The defendant asserts that evidence that the balance of the funds for the purchase of the Stamford condominium and dock, i.e., $150,000, was accumulated during the marriage is found in the plaintiff's testimony that at the time of the parties' remarriage in 1968, he had no assets, he earned a large income from 1968 through 1981, he received a large

---

[5] It is important to note that the plaintiff's financial affidavit filed with the court on June 14, 1988, lists the condominium and dock, valued at $300,000, along with several other assets. In listing the other assets, however, the plaintiff specifically included only his share of the equity, whereas in listing the condominium and dock, he listed the entire value. He listed, for example, a one-half equity interest in the property at Remsenburg, Long Island, New York, valued at $900,000 and a one-half interest in the property in Uruguay, valued at $32,500.

In addition, the plaintiff purchased the Stamford condominium and dock in October, 1986, which was after the parties had separated in 1984.

severance payment from his former employer in 1981, and he inherited (besides personal property such as antiques, furnishings and gold coins) only the Swiss bank account from his father. In addition, it should be noted that although the defendant testified at the trial, she offered no testimony that her income in any way contributed to the acquisition of the Stamford condominium and dock.

On the other hand, the plaintiff contends that the defendant misstates the trial court's finding by claiming that it said that the condominium and dock were acquired "entirely" with funds inherited from his father. The plaintiff asserts, rather, that the court was correct in finding that the condominium and dock were acquired *with inherited funds*. The plaintiff also points out that he testified that he purchased one half ($150,000) of the condominium with funds from the Swiss bank account inherited from his father. Therefore, the plaintiff contends, since the court did not find, as the defendant maintains, that the condominium and dock were acquired "entirely" with inherited funds, there was no error in this finding.

Alternatively, the plaintiff argues that it would have been reasonable for the court to conclude on the evidence that the property was purchased entirely with inherited funds. His argument proceeds as follows. The plaintiff testified that he transferred his stocks and bonds account from Merrill Lynch to Chemical Securities, a special department of Chemical Bank. The plaintiff asserts that, although there was no testimony introduced concerning the source of funds for the Merrill Lynch account, the trial court could have made a reasonable inference from the evidence presented that it was established with the proceeds from the sale of one half of the plaintiff's interest in the New York real estate partnership that was inherited from his mother. In 1973, the plaintiff inherited from his mother's estate

an interest in a limited partnership at 590 West End Avenue, New York, New York. In 1979, using funds inherited from his father, the plaintiff purchased an additional interest in the real estate partnership. The plaintiff subsequently sold one half of his interest in 1983, realizing approximately $130,000.

In addition, the plaintiff claims that from 1979 to 1981 he was spending more than he was earning. Therefore, the plaintiff asserts, it would have been reasonable for the court to conclude that the only possible source of funds for the stocks and bonds held in the plaintiff's Merrill Lynch account was either the proceeds from the sale of the West End Avenue property or his retirement fund from Merban Corporation that he withdrew when he left that company in 1981. When he left Merban Corporation, he testified that he received a check from the employee pension trust for $228,614. He further testified that he invested $205,000 of that money in several stock investments that did not include the investments with Merrill Lynch. On the basis of this testimony, the plaintiff asserts that the only reasonable inference that could be drawn was that he funded his Merrill Lynch account with proceeds acquired from the sale of his interest in the West End Avenue partnership that had been inherited.

An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. *McPhee* v. *McPhee,* 186 Conn. 167, 177, 440 A.2d 274 (1982); *Gallo* v. *Gallo,* 184 Conn. 36, 50, 440 A.2d 782 (1981). It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. *Solomon* v. *Aberman,* 196 Conn. 359, 378, 493 A.2d 193 (1985). " ' " 'On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book, [§ 4061]. . . . [W]here the factual basis of the court's

decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are *clearly erroneous.*' (Emphasis added.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Cookson* v. *Cookson,* [supra, 242–43].' . . ." *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.,* 213 Conn. 486, 498, 569 A.2d 32 (1990). The Supreme Court will not overturn findings of fact made by a trial court reasonably supported by the evidence or based on inferences reasonably drawn from the evidence. See *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985); *Solomon* v. *Aberman,* supra. If, however, the factual or legal basis of a trial court's decision is unclear, ambiguous, incomplete, or the court has failed to state any basis for its decision, this court has the power to remand the case for further articulation of the basis of the trial court's decision pursuant to Practice Book § 4061. *State* v. *Wilson,* 199 Conn. 417, 434–35, 513 A.2d 620 (1986); *State* v. *Lafferty,* 191 Conn. 73, 463 A.2d 238 (1983); *Kaplan* v. *Kaplan,* 185 Conn. 42, 46, 440 A.2d 252 (1981); *Scherr* v. *Scherr,* 183 Conn. 366, 368–69, 439 A.2d 375 (1981); *Powers* v. *Powers,* 183 Conn. 124, 125, 438 A.2d 845 (1981). Practice Book § 4061 provides in part: "If the supreme court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision."

We have set out certain evidence together with claims of the parties directed to the source of the disputed half of the purchase price, i.e., $150,000 of the Stamford condominium and dock. As we have indicated, the appellate record concerning that matter is such that that issue is not amenable to meaningful appellate review. "It is the duty of the judge who tried the case to set forth the basis of his decision." *Powers* v. *Powers,*

supra, 125. "An articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification." *State* v. *Wilson,* supra, 435. The supervision of a case on appeal to this court is in the Supreme Court. *State* v. *Pollitt,* 199 Conn. 399, 415, 508 A.2d 1 (1986); *State* v. *Ostroski,* 184 Conn. 455, 460, 440 A.2d 166 (1981). For the reasons set out above, we remand this case, sua sponte, for further articulation.

On remand, the trial court, *Bassick, J.,* must answer two questions. First, whether the Stamford condominium and dock were entirely or partly inherited, gifted or acquired with inherited funds by the plaintiff. The trial court must fully set out the factual basis of its answer to this question. Second, having answered the first question as directed, the trial court must then answer the question of what effect, if any, its answer to the first question has on the overall disposition of the real and personal property of the parties as set out in its memorandum of decision. In the event that its answer to the second question is that it has no effect, it should say that. If, however, its answer is that it does have an effect, the trial court should then set out the factual basis for its determination of the nature of that effect. Once the trial court, *Bassick, J.,* has articulated as directed, it should promptly file its findings and conclusions with the clerk of this court for our review. In addition, we want to emphasize that in remanding this case, we intimate no view on the issue to be resolved by the trial court or of any of the defendant's other claims of error which we may later be called upon to decide.

Accordingly, the case is remanded to the trial court, *Bassick, J.,* for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.