PATRICIA COSTA *v.* HUMBERTO COSTA
(AC 18958)

Foti, Mihalakos and Zarella, Js.

Argued January 26—officially released April 4, 2000

*Abraham I. Gordon,* with whom were *Ronald D. Japha,* and, on the brief, *Richard S. Scalo,* for the appellant (defendant).

*Matthew J. Broder,* for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. In this appeal from a judgment of marital dissolution, the defendant, Humberto Costa, claims that the trial court improperly (1) awarded the plaintiff, Patricia Costa, a share of his lump sum injury settlement, (2) ordered him to pay the plaintiff $5000 as counsel fees, (3) ordered him to assume ownership and all debts of the plaintiff's business, (4) awarded the plaintiff fifteen years of alimony and (5) issued orders regarding the parties' joint residence and liability for the plaintiff's personal bills. We affirm the judgment of the trial court.

The following facts are pertinent to this appeal. On February 25, 1984, the plaintiff and the defendant were married and subsequently had three children.[1] On October 9, 1998, the marriage was dissolved. At the time of the dissolution, the plaintiff was forty years of age and in fair health. She is a high school graduate and, for most of the marriage, did not work outside of the home.

---

[1] The court's orders, in regard to the children, are not at issue in this appeal.

The trial court found that she had an earning capacity of $280 per week.

The defendant is thirty-eight years old and completed two years of high school. For the entire length of the marriage, he operated a pool cleaning business, which was in the plaintiff's name. On October 21, 1991, the defendant was involved in a motor vehicle accident. As a result of the accident, the defendant has serious health problems and receives Social Security disability income of $220.93 per week.

The parties instituted a personal injury action as a result of the defendant's accident, which ultimately was settled. Under the terms of the structured settlement, the parties received a lump sum payment of $248,000[2] and the defendant also receives $2061.90 per month for a period of twenty years, which began in September, 1993. In 1994, the parties used the $248,000 received in the settlement to purchase a house in Trumbull. The house was later sold, and the proceeds, approximately $240,000 were placed in escrow.

Despite receiving disability income, the defendant continues to operate the pool business, and the trial court found that he had an earning capacity from his self-employment of $450 per week. The trial court also found that the marriage was dysfunctional and that it would serve no useful purpose to chronicle the causes for the marital breakdown. Finally, the court, in fashioning its orders, applied the pertinent criteria outlined in chapter 815j of the General Statutes.

The trial court ordered the defendant to pay the sum of $1 per year as alimony for a period of fifteen years, which could not be extended beyond that period of time. The marital premises were awarded to the plain-

---

[2] The settlement agreement provided for a lump sum payment of $550,000. After the payment of attorney's fees and medical bills, the parties received payment of $248,000.

tiff, and the defendant retained sole ownership of the business property located on Fairview Avenue in Bridgeport. The defendant was to receive 75 percent, and the plaintiff 25 percent, of the monthly payment of $2061. All of the assets and liabilities of the business were awarded to the defendant. The lump sum proceeds in the escrow account in the amount of $240,000 were divided equally between the plaintiff and the defendant. The defendant appeals from the trial court's judgment challenging its allocation of assets. Additional facts will be addressed where necessary to the resolution of this appeal.

I

The defendant first claims that the trial court improperly awarded the plaintiff a share of the defendant's lump sum payment from the structured settlement. We disagree.

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." *Rostain* v. *Rostain*, 213 Conn. 686, 693, 569 A.2d 1126 (1990). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." *Blake* v. *Blake*, 207 Conn. 217, 229, 541 A.2d 1201 (1988). Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm convic-

tion that a mistake has been committed." (Internal quotation marks omitted.) *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 263, 684 A.2d 693 (1996).

"The distribution of assets in a dissolution action is governed by [General Statutes] § 46b-81, which provides in pertinent part that a trial court may assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . This approach to property division is commonly referred to as an all-property equitable distribution scheme." (Internal quotation marks omitted.) *Lopiano* v. *Lopiano*, 247 Conn. 356, 363–64, 752 A.2d 1000 (1998).

"There are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Internal quotation marks omitted.) Id., 364.

"The failure to interpret property broadly pursuant to § 46b-81 could result in substantial inequity . . . and would not be in keeping with the equitable nature of dissolution proceedings . . . ." Id., 371. "Although it is well established that trial courts have broad equitable

remedial powers regarding marital dissolutions . . . it is equally well settled that [c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. *Passamano* v. *Passamano*, 228 Conn. 85, 88 n.4, 634 A.2d 891 (1993). Thus, the court's authority to transfer property appurtenant to a dissolution proceeding requires an interpretation of the relevant statute. Statutory construction, in turn, presents a question of law over which our review is plenary." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 272, 752 A.2d 1023 (1999).

In *Lopiano* v. *Lopiano*, supra, 247 Conn. 363, our Supreme Court first considered whether, at the time of dissolution, a personal injury award is a property interest encompassed within the meaning of "property" under § 46b-81. The court began its analysis of § 46b-81 and concluded that a personal injury award was marital property and, as such, could be properly distributed, provided the factors recited in § 46b-81 were properly considered.

This case is even more compelling than *Lopiano* in that the personal injury award was in the name of both the plaintiff and the defendant. Additionally, the settlement in this case did not break down the award, unlike the jury verdict in *Lopiano*, to reflect past pain and suffering, future pain and suffering, past loss of earnings, future loss of earnings and past medical expenses. Even if the funds contained in the escrow account had been derived solely from the defendant's shares of the parties' 1993 tort settlement, such a settlement is to be included in the marital estate and is subject to equitable distribution upon dissolution of the parties' marriage. See id., 356; *Tyc* v. *Tyc*, 40 Conn. App. 562, 672 A.2d 526, cert. denied, 237 Conn. 916, 676 A.2d 398 (1996). The trial court weighed the factors set forth in § 46b-81 and distributed the assets accordingly, and, therefore,

properly awarded the plaintiff a share of the defendant's lump sum and structured injury settlement.

## II

The defendant next claims that the trial court improperly awarded the plaintiff attorney's fees in the amount of $5000. We disagree.

General Statutes § 46b-62 governs the award of attorney's fees in a dissolution proceeding.[3] Normally, where parties are financially able to pay their own attorney's fees they should be permitted to do so. See *Bornemann* v. *Bornemann*, 245 Conn. 508, 543, 752 A.2d 978 (1998). There is an exception to the rule, however, in that, if denying an award of attorney's fees would undermine the court's prior financial orders, then the court, in its discretion, may order the payment of attorney's fees. See *Fitzgerald* v. *Fitzgerald*, 190 Conn. 26, 34, 459 A.2d 498 (1983). "An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Bornemann* v. *Bornemann*, supra, 543.

In this case, there is a substantial disparity between the defendant's and the plaintiff's anticipated future earnings and sources of income. Also, while the plaintiff could afford to pay her own attorney's fees, "the availability of sufficient cash to pay one's attorney's fees is not an absolute litmus test for making an award pursuant to General Statutes § 46b-62. . . . This is because a trial court's discretion should be guided so that its decision regarding attorney's fees does not undermine its purpose in making any other financial award." (Cita-

---

[3] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

tions omitted; internal quotation marks omitted.) *Fitzgerald* v. *Fitzgerald*, supra, 190 Conn. 33–34. In *Tirado* v. *Tirado*, 7 Conn. App. 41, 46, 507 A.2d 470 (1986), we upheld a $10,000 attorney's fee award where the receiving spouse also received $200,000 in alimony, concluding that "we cannot find that the trial court abused its discretion or acted unreasonably in granting the defendant's request for attorney's fees, since to do otherwise would undermine the $200,000 alimony award to the defendant."

Although the trial court did not explain its award of attorney's fees, the record supports the conclusion that if the plaintiff had to pay her own attorney's fees, this would undermine the trial court's financial orders. The trial court awarded the plaintiff attorney's fees in conjunction with an alimony award of only $1 per year. To set aside the award of counsel fees would force the plaintiff to pay her attorney's fees out of funds that were granted for her support. It is clear that the court did not intend such a result and specifically awarded $5000 in attorney's fees to avoid it. The defendant has failed to show that the trial court abused its discretion and, therefore, the court properly awarded the plaintiff attorney's fees in the amount of $5000.

### III

The defendant next argues that the trial court improperly ordered the defendant to assume ownership and all debts of the plaintiff's business. We disagree.

The defendant's claim, which in essence states that from the court's orders giving him the business, he will lose his Social Security benefits and be unable to support himself, is without merit. The record clearly shows that the defendant was in control of the business and, thus, had no right to collect Social Security benefits in addition to running the business. The evidence presented at trial shows that the defendant, and not the plaintiff had experience in the pool maintenance and

repair business. Before, during and after the marriage, it was the defendant who cleaned and repaired the pools. Though the defendant put the business in the plaintiff's name, it was the defendant who had developed the client list since the early 1980s. Furthermore, the defendant performed all of the physical labor and attended to all business matters, such as what services to provide and how much to charge for those services. The plaintiff's only role in the business was to send bills to customers in accordance with the defendant's instructions. During the first half of 1998, it was the defendant who collected over $15,000 on behalf of the business while also collecting Social Security benefits from the 1991 accident. The trial court's orders simply corrected the unjust enrichment that the defendant was receiving from both the business and his Social Security benefits. As a result, the trial court's orders, which left the defendant with the company's assets,[4] were proper, notwithstanding any effect they may have on his entitlement to Social Security benefits.

## IV

Next, the defendant claims that the court improperly awarded fifteen years of alimony to the plaintiff. We disagree.

General Statutes § 46b-82[5] and the factors contained therein govern whether the court will award alimony

---

[4] These assets include, but are not limited to, the business' client list, a van, vacuum cleaners and other tools and supplies necessary to run the business. The trial court orders also left the defendant in possession of all the accounts receivable from the business.

[5] General Statutes § 46b-82 provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment,

in a dissolution action. "The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight." *Kane* v. *Parry*, 24 Conn. App. 307, 313, 588 A.2d 227 (1991). " 'As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony.' " Id., 314. The court is empowered, after considering the statutory criteria, to award either time limited alimony or unlimited alimony.

The defendant's reliance on *Mathis* v. *Mathis*, 30 Conn. App. 292, 620 A.2d 174 (1993), and *Ippolito* v. *Ippolito*, 224 Conn. 905, 615 A.2d 1047 (1992), is misplaced. In both of those cases, the spouse receiving the alimony complained that the award of alimony should not have been time limited. In this case, the spouse providing the alimony complains that the award of alimony was improper.

Here, the court carefully considered the evidence and the pertinent criteria outlined in § 46b-82 and concluded that the defendant was to pay the plaintiff alimony for fifteen years. Considering the parties' discrepancies in expected future earnings and expenses, and the fact that the plaintiff had a long period of total financial dependence on the defendant, the trial court's award of alimony was reasonable. The court properly limited the defendant's alimony payments to the plaintiff to fifteen years because, at the time of trial, the plaintiff had begun occupational training to obtain employment in the future. By setting a time limit to the alimony payments, the court concluded that, in the future, the plaintiff would no longer need any additional support

dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

from the defendant. The court provided a reasonable time for the plaintiff to establish herself. The trial court, therefore, properly awarded the plaintiff alimony for fifteen years.

V

Finally, the defendant claims that the court improperly issued orders regarding the parties' joint residence and liability for the plaintiff's personal bills. We do not agree.

A

The defendant first contends that the trial court improperly awarded the parties' marital residence to the plaintiff. We disagree.

In this case, it was the plaintiff, not the defendant, who provided each mortgage payment. In fact, the defendant never contributed any money to the monthly payments on the mortgage and the other expenses necessary to maintain the house. Furthermore, it was the plaintiff, not the defendant, who filed an action to quiet title against Adelino DaCosta, Antonio DaCosta and Manuel DaCosta to preserve the property as an asset of the marriage during pendency of this litigation. As a result of those actions, the plaintiff, not the defendant, incurred substantial attorney's fees. On the basis of these facts, we conclude that the trial court properly awarded the parties' joint residence to the plaintiff.

B

The defendant also contends that the trial court improperly included the plaintiff's personal debts as joint debt. We disagree.

"Requiring one party to assume the joint liabilities of the parties is authorized by General Statutes § 46b-81 . . . ." *Beede* v. *Beede*, 186 Conn. 191, 196–97, 440 A.2d 283 (1982). In this case, all of the plaintiff's alleg-

edly personal credit card and department store debts were incurred during the parties' marriage. The defendant claims that all the debts were assigned to him for payment from his portion of the house sale proceeds that were being held in escrow. As stated previously, however, the money held in escrow belonged to both of the parties as a marital asset, regardless of its source. The trial court properly treated the debts as joint debts and ordered that they be paid prior to the distribution of the escrow funds.

The judgment is affirmed.

In this opinion the other judges concurred.