ELIZABETH B. PORTER *v.* JOHN PORTER
(AC 19595)

Schaller, Spear and Stoughton, Js.

Argued October 31, 2000—officially released February 13, 2001

*Bruce W. Diamond,* with whom was *Richard M. Marano,* for the appellant (defendant).

*Campbell D. Barrett,* with whom, on the brief, was *C. Michael Budlong,* for the appellee (plaintiff).

SCHALLER, J. The defendant, John Porter, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Elizabeth B. Porter. On appeal, the defendant claims that the court improperly (1) ordered him to pay time limited alimony for a fourteen year period, (2) determined the value of the parties' marital home to be $270,000, the defendant's Saab vehicle to be $4300 and the plaintiff's Plymouth vehicle to be $9490, (3) classified the funds in the defendant's business and share bank accounts as "property" subject to distribution under General Statutes § 46b-81 and (4) ordered the defendant to maintain life insurance without requiring evidence of the cost or the availability of such insurance to him. We affirm the judgment of the trial court.

The following facts and procedural history are necessary for a proper resolution of this appeal. The plaintiff and the defendant were married on June 13, 1981. Because of a breakdown of their relationship, the plaintiff brought this dissolution action on February 25, 1997. The parties have two minor children, ages eight and twelve at the time of trial, born to them during their marriage.

Before trial began, the parties entered into an agreement in which they disposed of the issues concerning custody, visitation, child support and division of personal property. The parties, however, were unable to reach an agreement regarding alimony and asset distribution.

On April 30, 1999, the court rendered judgment dissolving the parties' marriage, concluding that it had broken down irretrievably due to the defendant's adultery. The court also entered orders concerning alimony and asset distribution. With regard to the issues in this appeal, the court ordered that (1) the defendant pay

time limited alimony in the amount of $400 per week for a fourteen year period, (2) the defendant receive the Saab vehicle, valued at $4300, (3) the plaintiff receive the marital home, valued at $270,000, and the Plymouth vehicle, valued at $9490, and (4) the defendant maintain his then existing life insurance policy in the amount of $350,000, naming the children of the marriage as beneficiaries. This appeal followed. Additional facts will be set forth as they become relevant to the defendant's claims.

I

The defendant first claims that the court improperly ordered him to pay time limited alimony for a fourteen year period. To advance this claim, the defendant asserts the following three arguments: (1) because the court indirectly linked the time period of alimony to the children's postmajority education, the time limited alimony here is really a disguise for impermissible child support; (2) the court based its decision as to the time period on speculative evidence; and (3) the court awarded the plaintiff alimony in excess of her request. We are unpersuaded.

The following additional facts are pertinent to the defendant's claim. During the marriage, the plaintiff sacrificed her career goals to care for the children, and to allow the defendant to complete law school and pursue a career as an attorney. The plaintiff also was forced to abandon her pursuit of obtaining her master's degree when this action commenced. For her sacrifices, the plaintiff asked the court for time limited alimony in the amount of $400 per week for, at least, a period of ten years. The court awarded the plaintiff's requested amount per week, but it extended the time period for the alimony to fourteen years. In doing so, the court reasoned that the fourteen year time period represented "a time when the children are likely to have left mother's

home and completed their education, giving mother an opportunity to begin a full-time focus on her career and an opportunity to enhance her income at that time."

Before addressing any of the defendant's claims, we note that our standard of review in domestic relations cases is limited. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." *Hathaway* v. *Hathaway*, 60 Conn. App. 818, 818–19, 760 A.2d 1280 (2000).

A

The defendant first claims that the court improperly awarded the time limited alimony for a fourteen year period because it linked that time limit to the children's postmajority education, thereby rendering an impermissible child support award. Stated another way, the defendant argues that the alimony here is actually child support under the guise of alimony. We disagree.

General Statutes § 46b-82[1] describes circumstances under which a court may award alimony. "The court is

---

[1] General Statutes § 46b-82 provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51,

to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony. . . . The court is empowered, after considering the statutory criteria, to award either time limited alimony or unlimited alimony." (Citations omitted; internal quotation marks omitted.) *Costa* v. *Costa*, 57 Conn. App. 165, 174, 752 A.2d 1106 (2000).

"In particular, rehabilitative alimony, or time limited alimony, is alimony that is awarded primarily for the purpose of allowing the spouse who receives it to obtain further education, training, or other skills necessary to attain self-sufficiency." *Bornemann* v. *Bornemann*, 245 Conn. 508, 539, 752 A.2d 978 (1998).

In the present case, the court's decision, rendered from the bench, demonstrates that it considered the statutory criteria in deciding to award time limited alimony, namely, to give the plaintiff an opportunity to develop marketable skills. It reasoned that while the children were in college, the alimony would "[give the] mother an opportunity to begin a full-time focus on her career and an opportunity to enhance her income at that time." Contrary to the defendant's argument, the court's reference to the children's college attendance did not imply that the alimony funds were earmarked for the children's postmajority support. Rather, the court simply referenced a point at which the mother would have the opportunity to pursue career goals. We cannot conclude, therefore, that the court abused its broad

shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

discretion by referencing the children's postmajority education when it awarded the time limited alimony for a fourteen year period.

## B

The defendant next claims that the court improperly ordered him to pay time limited alimony for a fourteen year period because the court based its decision on speculative evidence. "In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Lake* v. *Lake*, 49 Conn. App. 89, 91, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998). After reviewing the facts set forth in the court's decision regarding its award of alimony, we conclude that those facts were supported by the evidence and, thus, the court did not abuse its discretion.

## C

The defendant also claims that the court improperly ordered him to pay time limited alimony for a fourteen year period because it awarded the plaintiff alimony in excess of the ten years she had requested. We are unpersuaded.

"We have often stated that the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances that arise out of the dissolution of a marriage. *Tessitore* v. *Tessitore*, 31 Conn. App. 40, 45, 623 A.2d 496 (1993). These equitable powers give the court the authority to consider all the circumstances that may be appropriate for a just and equitable resolution of the marital dispute. . . . *Sands* v. *Sands*, 188 Conn. 98, 105, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983). The trial court may award alimony to a party *even if that party does not seek it and has waived all*

*claims for alimony.* Id., [102–105] (court free to reject stipulation of parties for no alimony as unfair and inequitable and to award $1 per year alimony). A trial court may award alimony as part of the court's general equitable power. *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983)." (Emphasis added; internal quotation marks omitted.) *Lord* v. *Lord,* 44 Conn. App. 370, 374, 689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998).

In this case, the court ordered the defendant to pay the plaintiff time limited alimony for a longer duration than she had requested. Although the plaintiff had requested time limited alimony for a period of, at least, ten years, the court awarded alimony for a period of fourteen years. We note that the court could have completely ignored the plaintiff's request and ordered lifelong alimony without abusing its discretion. General Statutes § 46b-82. We conclude, therefore, that the court did not abuse its discretion in awarding the plaintiff time limited alimony in excess of her minimum request.

## II

The defendant next claims that the court improperly found the value of (1) the parties' marital home to be $270,000, (2) the defendant's Saab vehicle to be $4300 and (3) the plaintiff's Plymouth vehicle to be $9490. We are not persuaded by the first two claims and decline to review the third claim.

The following additional facts are necessary for our resolution of the defendant's claims. At trial, neither party called any appraisers or other experts to testify about the fair valuation of the disputed property. Instead, the parties testified about those issues. With regard to the marital home, the defendant testified that the value of the home was $285,000. In arriving at that figure, the defendant added the purchase price of the

home, $270,000, to the cost of subsequent home improvements, $15,000. The plaintiff, on the other hand, testified that the value of the home was $271,750. She had a Realtor conduct a market analysis, which gave a range of value of the home. According to the plaintiff, she derived her figure from the midpoint of that market analysis. The court found the value of the home to be $270,000, an amount slightly less than the plaintiff's estimation.

As to the defendant's Saab vehicle, the defendant originally stipulated in his financial affidavit that the value of the vehicle was $4300, which represented its retail value. At trial, however, he argued that the lesser trade in value of the vehicle, $2425, should be used in the court's valuation. Nevertheless, the court found the value of the Saab vehicle to be $4300.

The parties also disputed the value of the plaintiff's Plymouth vehicle. The defendant claimed that the vehicle had a retail value of $16,700. In response, the plaintiff argued that the court should utilize the lower trade in value of the vehicle, $12,900. The court rejected both amounts and found the value of the Plymouth vehicle to be $9490.

## A

### THE MARITAL HOME

The defendant first contends that the court's valuation of the parties' marital home was improper because it chose a value less than both parties requested. We disagree.

We begin our analysis by noting that a trial court has broad discretion in determining the value of property. "In assessing the value of . . . property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish

value, and then employs the most appropriate method of determining valuation. . . . The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." (Internal quotation marks omitted.) *Rolla* v. *Rolla*, 48 Conn. App. 732, 748, 712 A.2d 440, cert. denied, 245 Conn. 921, 717 A.2d 237 (1998). With that standard of review in mind, we now turn our attention to the present case.

Here, neither party provided the court with expert testimony as to the value of the home. As a result, the court was left with the claims of the parties and its general knowledge to establish the value of the home. According to the defendant, the value of the home was $285,000. The court, however, determined the value to be $270,000, a figure slightly less than the value proposed by the plaintiff, $271,750, which she derived from the mid range of a market analysis. Given the circumstances the court faced in determining the value of the marital home, we cannot conclude that its valuation of $270,000 was clearly erroneous. Id., 749.

B

THE SAAB VEHICLE

The defendant also argues that the court's valuation of his Saab vehicle was improper because the court utilized the retail value rather than the trade in value. We are unpersuaded.

As discussed in part II A of this opinion, we accord a trial court great deference in assessing the value of property. As with his valuation of the home, the defendant provided the court with little evidence as to the value of the vehicle because he did not introduce any

expert testimony. Prior to trial, however, the defendant stipulated in his financial affidavit that his Saab vehicle had a retail value of $4300. Nonetheless, at trial, he argued that the value of the vehicle was $2425, which represented the lower trade in value. The court adopted the retail value. Under those circumstances, we conclude that the court did not abuse its discretion in valuing the Saab vehicle at $4300.

C

THE PLYMOUTH VEHICLE

The defendant next contends that the court's valuation of the plaintiff's Plymouth vehicle was improper because the court utilized a value less than the figure that even the plaintiff requested. We decline to review this claim.

"It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. Practice Book § 61-10; *Lombardi* v. *Lombardi*, 55 Conn. App. 117, 118, 737 A.2d 988 (1999), cert. denied, 252 Conn. 943, 747 A.2d 520 (2000). Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]." (Internal quotation marks omitted.) *Fitzgerald* v. *Fitzgerald*, 61 Conn. App. 162, 164, 763 A.2d 669 (2000). "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claim] would be entirely speculative." (Internal quotation marks omitted.) Id., 163.

With regard to the Plymouth vehicle, the plaintiff argued at trial that the vehicle had a value of $12,900 while the defendant argued that it had a value of $16,700.

The court, however, rejected both amounts and found the value of the vehicle to be $9490. In doing so, the court failed to articulate any reason for the basis of its decision. Because the defendant did not seek an articulation on this matter, we do not have a record adequate to review the court's finding. Therefore, we decline to review this claim.

### III

The defendant also claims that the court improperly classified the funds in his business and share bank accounts as "property" subject to distribution under § 46b-81. We are not persuaded.

The following additional facts are pertinent to the defendant's claim. At the time of trial, the defendant was employed as an attorney by Waterbury Hospital. In addition, he had a private law practice and maintained a business bank account for that practice. The balance in his business bank account was approximately $12,753.

The defendant also maintained a share bank account. Part of the balance of that account included $17,500 that the defendant derived from his private law practice. In dividing the property, the court considered the $12,753 from the defendant's business account and the $17,500 from his share account as property subject to distribution pursuant to § 46b-81.

We begin our analysis by noting that the legislature has granted courts great discretion in distributing assets in a dissolution action. "The distribution of assets in a dissolution action is governed by [General Statutes] § 46b-81, which provides in pertinent part that a trial court may assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of the *property*, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage,

the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . This approach to property division is commonly referred to as an all-property equitable distribution scheme. . . .

"There are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Citation omitted; emphasis added; internal quotation marks omitted.) *Costa* v. *Costa,* supra, 57 Conn. App. 169, quoting *Lopiano* v. *Lopiano,* 247 Conn. 356, 363–64, 752 A.2d 1000 (1998).

The defendant argues that under the first part of the analysis, the court improperly classified the funds in the bank accounts as "property" rather than future income because he was going to use those funds to pay the plaintiff's alimony. We disagree.

In *Lopiano* v. *Lopiano,* supra, 247 Conn. 365, our Supreme Court determined that the term "property" as used in § 46b-81 has a broad definition. It defined property "as the term commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest,

and includes real and personal property, easements, franchises, and incorporeal hereditaments . . . ." (Internal quotation marks omitted.) Id., quoting Black's Law Dictionary (6th Ed. 1990). "[This] broad definition of property [however is] not entirely without limitation, and . . . property under § 46b-81 includes only interests that are presently existing, as opposed to mere expectancies." *Lopiano* v. *Lopiano*, supra, 365–66.

In the present case, there is no question that the funds in the defendant's business and share bank accounts were presently existing at the time of trial and that he had a presently existing interest in such funds. The interest in those funds was not transformed, as the defendant argues, into a mere expectancy simply because he indicated that the funds may be used to pay the plaintiff's alimony in the future. We conclude that the court properly classified the funds as "property" as the term is used in § 46b-81 and, as such, the funds were subject to distribution.

## IV

The defendant's final claim is that the court improperly ordered him to maintain his then existing life insurance policy in the amount of $350,000, naming the children of the marriage as beneficiaries. Specifically, the defendant claims that the court improperly ordered him to maintain his life insurance without evidence of the cost or the availability of such insurance to him. We disagree.

The following additional facts are pertinent to the defendant's claim. At the time of the dissolution, the defendant had two life insurance policies; one with a face value of $350,000, and the other with a face value of $153,000. The defendant, in his financial affidavit, represented to the court that both of those life insurance policies were in existence at the time of the dissolution. As part of its judgment, the court ordered the defendant

to maintain the life insurance policy with a face value of $350,000, naming the children of the marriage as beneficiaries.

"An order for life insurance is very often an appropriate and necessary component of a judgment of dissolution of marriage." (Internal quotation marks omitted.) *Quindazzi* v. *Quindazzi*, 56 Conn. App. 336, 338, 742 A.2d 838 (2000). "Indeed, orders requiring the maintenance of life insurance have been approved on numerous occasions by our courts. See *Leo* v. *Leo*, 197 Conn. 1, 495 A.2d 704 (1985); *Wolk* v. *Wolk*, 191 Conn. 328, 464 A.2d 780 (1983); *Broaca* v. *Broaca*, 181 Conn. 463, 435 A.2d 1016 (1980); *Mauro* v. *Mauro*, 16 Conn. App. 680, 548 A.2d 471 (1988); *Papageorge* v. *Papageorge*, [12 Conn. App. 596, 533 A.2d 229 (1987)]. In each of these cases, however, it is important to note that the life insurance policy was in existence at the time of the judgment. The trial court in each of these cases, therefore, had available to it all of the information necessary to craft an appropriate order regarding such insurance." (Internal quotation marks omitted.) *Lake* v. *Lake*, supra, 49 Conn. App. 91–92; see also *Carroll* v. *Carroll*, 55 Conn. App. 18, 23, 737 A.2d 963 (1999).

On the other hand, we have held that if the life insurance was not in existence at the time of the judgment, the court cannot craft an order regarding such insurance without evidence of the cost or the availability of the life insurance to the party ordered to purchase it. *Michel* v. *Michel*, 31 Conn. App. 338, 340–41, 624 A.2d 914 (1993). "Without knowing the availability of such insurance, the trial court has entered an order with which the [defendant] may not be able to comply. Without knowing the cost of such insurance, the trial court has entered other financial orders that may be inappropriate, that is, too high or too low depending on the funds required to obtain such insurance." Id., 341.

According to the defendant, the present case is controlled by *Michel* and, as such, the court needed evidence as to the cost and the availability of the life insurance to him. We disagree. Unlike the situation in *Michel*, the life insurance in the present case was in existence at the time of the judgment. Through his financial affidavit, the defendant represented to the court that he had two existing life insurance policies. The court ordered that the defendant maintain one such policy for the benefit of the children. It changed neither the value nor any other condition of the life insurance that would affect its availability to the defendant. Under those circumstances, we conclude that the court had available to it all of the information necessary to craft an appropriate order regarding the life insurance.

The judgment is affirmed.

In this opinion the other judges concurred.