TYLER E. LYMAN, INC. *v.* 19 THAMES STREET
PARTNERSHIP ET AL.
(AC 28194)

Gruendel, Robinson and Foti, Js.

---

Argued March 27—officially released August 12, 2008

*Alan R. Messier*, with whom, on the brief, was *Vincent Provenzano*, for the appellant (plaintiff).

*Michael S. Bonnano*, with whom, on the brief, were *Paul M. Geraghty* and *Marisa A. Mascolo*, for the appellees (defendants).

*Opinion*

GRUENDEL, J. The plaintiff, Tyler E. Lyman, Inc., appeals from the judgment of the trial court, which determined that the plaintiff is not entitled to a brokerage commission on a 2002 lease entered into between the defendant 19 Thames Street Partnership[1] and the defendant's lessee. On appeal, the plaintiff claims that the court improperly concluded that the current occupant of the defendant's premises is not necessarily the defendant's "tenant" and, as a consequence, mistakenly held that there was no renewal of a 1997 lease brokered by the plaintiff. We disagree and affirm the judgment of the trial court.

On November 4, 1996, the plaintiff, a licensed real estate broker, entered into a listing agreement with the defendant under which the plaintiff would attempt to find a tenant for commercial real estate owned by the defendant. The agreement provided that if the plaintiff found a tenant for the premises, it would be entitled to a broker's commission totaling 10 percent of the initial lease price and an additional 5 percent of any renewal lease price. The plaintiff procured Proto-Power

---

[1] The action was brought against 19 Thames Street Partnership and its general partners: Helen Langfield; Louise Chesler; Jonathan E. Sanders; Ellen Sanders Nirenstein; Joanna Langfield Rose; Alfred Agrin; Sybs, Inc.; Calema 1, LLC; Stanley Bergman, trustee for the Harry Elion Trust FBO; Stanley Bergman, trustee for the Elion Langfield Trust; and Jeffrey Nirenstein, trustee for the Esther E. Smithline Trust. For simplicity, we refer to 19 Thames Street Partnership as the defendant.

Corporation (Proto-Power) to lease the premises, which entered into a five year lease with the defendant for occupancy of 15 Thames Street. As a part of the leasing transaction, Proto-Power's parent company at the time, Kollmorgen Corporation (Kollmorgen), guaranteed Proto-Power's obligations under the lease. The plaintiff received its commission on this five year lease.

On October 13, 2000, during the course of the five year lease term, Utility Engineering Corporation (Utility Engineering) acquired Proto-Power from Kollmorgen. Shortly thereafter, Utility Engineering sent a letter to the defendant, indicating that it owned all stock in Proto-Power and acknowledging responsibility for Kollmorgen's guarantee of the 1997 lease agreement.

Upon the expiration of the 1997 lease, Proto-Power did not renew, nor did it execute a new lease with the defendant. Prior to the termination of the 1997 lease in early 2002, however, Utility Engineering, Proto-Power's parent corporation, entered into an agreement with the defendant to lease the building occupied by Proto-Power, 15 Thames Street, in addition to the adjacent building, number 19. Proto-Power was not a party to this new lease and is not listed as a tenant in the agreement. Utility Engineering moved into the new additional space acquired under the 2002 lease, but Proto-Power continued to possess and occupy the same space it had under its 1997 lease and did so through the time of trial.

In response, the plaintiff commenced the present action. Its complaint alleged that the 2002 lease between the defendant and Utility Engineering actually constituted a renewal of the 1997 lease between the defendant and Proto-Power, thereby entitling the plaintiff to a commission under the original listing agreement. Specifically, the complaint alleged (1) breach of the listing agreement, (2) breach of the implied covenant of good faith and fair dealing and (3) unjust enrichment. After

the court granted the defendant's motion for summary judgment as to the unjust enrichment claim, the remaining two counts were tried to the court. The court found in favor of the defendant on both, concluding that the tenant under the 2002 lease was Utility Engineering and not Proto-Power and that, consequently, there could be no renewal of the 1997 lease and no breach of the listing agreement.[2] This appeal followed.

The question of whether a lease has been renewed is one of fact for the determination of the trial court. *Perrotti* v. *Chiodo*, 21 Conn. App. 288, 290, 573 A.2d 342 (1990). Accordingly, we will reverse the court's factual determinations only if they are clearly erroneous. See *Costa* v. *Costa*, 57 Conn. App. 165, 168, 752 A.2d 1106 (2000). The plaintiff contends that the court mistakenly concluded that Proto-Power was not a tenant under the 2002 lease. It argues that Proto-Power was indeed the defendant's tenant under the terms of the listing agreement. It claims that, this being the case, the fact that the tenant remains in possession of the premises indicates that there was, in fact, a renewal. We address each of these claims in turn.

I

We first consider whether the court erroneously determined that Proto-Power is not the defendant's tenant. We begin by noting that there is no dispute that Proto-Power was a tenant of the defendant under the 1997 lease—the dispute is over whether it remained a tenant under the 2002 lease. The thrust of the plaintiff's argument seems to be that by affirming the court's finding that Proto-Power was not a tenant under the 2002 lease, we would permit landlords and tenants to avoid paying brokerage commissions by simply

[2] The plaintiff has raised no claim with respect to either the claim of unjust enrichment or that of breach of the covenant of good faith and fair dealing in this appeal.

allowing another party to sign a renewal lease. We see little danger of this, as there is ample evidence in the record from which the court could have concluded that Proto-Power was not a tenant under the 2002 lease.

### A

The listing agreement between the plaintiff and defendant provided for "[c]ommissions on any renewals . . . between [the defendant] and this tenant . . . ." The court found that the lease between Proto-Power and the defendant was not renewed, a consequence of which is that the plaintiff cannot be entitled to additional commission. In so concluding, the court held that Proto-Power was not a "tenant" under the 2002 lease.

The plaintiff argues that because Proto-Power remains "in the same possession of the same premises doing the same thing under the same name," it remains a tenant of the defendant. The evidence, however, indicates to the contrary. First and foremost, there is the 2002 lease itself, which was executed by the defendant as "LANDLORD" and Utility Engineering as "TENANT." This is particularly pertinent when compared to the 1997 lease, which was executed by Proto-Power as "TENANT." In addition, Raymond Langfield, one of the managers of the defendant's business, testified at trial that he considered Utility Engineering a "completely new tenant" under the 2002 lease. He further testified that his negotiations regarding the 2002 lease were primarily with Al Lucas, the facilities manager of Utility Engineering, rather than with a representative of Proto-Power. Although there is also evidence that Langfield had correspondence with Kenneth Ewell, the president of Proto-Power, this is not dispositive. Ewell, while president of Proto-Power, was also a vice president of Utility Engineering.

There is also substantial evidence in the record indicating that Proto-Power actually was intending to move

out of the space on Thames Street until its parent company decided to lease the property. Langfield testified that his communications with Ewell were separate negotiations from those with Utility Engineering. He indicated that he was attempting to convince Proto-Power to remain in the building quite apart from negotiating with a potential new tenant. In addition, Ewell testified that Proto-Power was intending to move out of the Thames Street space. Indeed, Ewell noted that Utility Engineering and Proto-Power were looking for a new space together and that only later did Utility Engineering consider leasing the Thames Street property. Accordingly, the court could conclude that Proto-Power was not the tenant under the 2002 lease simply because it was intending to move in with its parent company wherever the parent company happened to find space and that the parent company found space on Thames Street on its own. In light of the foregoing, we cannot say that the finding that Proto-Power was not a tenant under the 2002 lease was clearly erroneous.[3]

B

The court also based its determination that Proto-Power was not a tenant under the 2002 lease on corporations law concepts. It held that even though Utility Engineering owns Proto-Power, as a parent corporation, it is "a distinct legal entity from its subsidiary."[4]

---

[3] The plaintiff also urges us to consider General Statutes § 47a-1 (*l*), which provides that the definition of tenant includes any person "entitled under a rental agreement to occupy a dwelling unit or premises . . . ." It argues that we should interpret the word "tenant" as meaning an entity with occupancy of, but without title to, property as was expounded in *Southington* v. *Francis*, 159 Conn. 64, 71, 266 A.2d 387 (1970), which was interpreting statutory text. The defendant correctly points out, however, that the statutory definition of the term does not necessarily apply to the term as used in a contract between the parties. The question of the intended meaning of the terms in the listing agreement is one of fact, not law. See *Bead Chain Manufacturing Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 274–75, 439 A.2d 314 (1981).

[4] Although the parties do not dispute the fact that Proto-Power and Utility Engineering were distinct entities, the defendant's arguments to illustrate

Whether the legal conclusion that Proto-Power and Utility Engineering are distinct legal entities is supported by sufficient facts is a mixed question of law and fact over which our review is plenary. See *Friezo* v. *Friezo*, 281 Conn. 166, 180, 914 A.2d 533 (2007).

"[I]t is a fundamental principle of corporate law that 'the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in the subsidiary and the two enterprises have identical directors and officers.' " *SFA Folio Collections, Inc.* v. *Bannon*, 217 Conn. 220, 232, 585 A.2d 666, cert. denied, 501 U.S. 1223, 111 S. Ct. 2839, 115 L. Ed. 2d 1008 (1991), quoting H. Henn & J. Alexander, Laws of Corporations (3d Ed. 1983) § 148, p. 355. We respect the distinct identity of a corporation from its shareholder-parent corporation unless: (1) the parties intermingle assets, accounts, records, employees and business transactions; (2) they flout corporate formalities; (3) there is insufficient capitalization as a separate entity; (4) the parties hold themselves out to the public as a single entity; or (5) one entity directs its policies primarily to the benefit of the other corporation and not its own. See id., 232–33, quoting H. Henn & J. Alexander, supra, § 149, pp. 355–56. In this case, there is no evidence that any of these five exceptions has been met.

There are no allegations that there was an intermingling of assets, records, or business transactions. Although Ewell was both the president of Proto-Power and a vice president of Utility Engineering, this does not indicate that the corporations impermissibly intermingled employees. See id., 232 (noting that corporations will be treated as distinct even if they have identical directors and officers). Indeed, Proto-Power

that Proto-Power was not a tenant under the 2002 lease focus on the distinct nature of the two corporations.

and Utility Engineering have different market focuses, which preclude an intermingling of business transactions. While Proto-Power designs nuclear power plants, Utility Engineering focuses on fossil fuel power plants. This fact also indicates that the corporations were not held out to the public as a single entity.

In addition, there has been no flouting of corporate formalities. This is illustrated by the fact that Utility Engineering purchased Proto-Power during the term of the 1997 lease and that Proto-Power has since been sold, which indicates that the two corporations were sufficiently separate to allow Utility Engineering to buy and sell Proto-Power in its entirety.

Finally, there is no evidence in the record that would tend to show that either corporation directed its policies primarily to the benefit of the other or that Proto-Power was insufficiently capitalized. Consequently, we agree with the court that Proto-Power and Utility Engineering were separate and distinct entities. As such, when Utility Engineering entered into the 2002 lease, it did so as a separate legal entity from Proto-Power.

II

We now move onto the broader question of whether there was a renewal of the 1997 lease, which would entitle the plaintiff to a commission under the listing agreement. As noted previously, the question of whether a lease has been renewed is one of fact for the determination of the trial court. *Perrotti* v. *Chiodo*, supra, 21 Conn. App. 290. The foregoing discussion with regard to whether Proto-Power was a tenant under the 2002 lease largely obviates the need for further discussion. If there were two different tenants under the two leases, there could be no renewal.

In addition, we agree with the court that in this case, "[t]he signing of a new lease by a different tenant demonstrates the opposite of renewal." The 1997 lease and

the 2002 lease were signed by different corporations. Moreover, although the 2002 lease did include the space that was the subject of the 1997 lease, the 2002 lease was for a much larger space.

Significantly, we note that the 1997 lease provided for the option of renewal "on the same terms and conditions" as provided in that document. It is clear that the terms of the 2002 lease were substantially different in light of the additional premises acquired under the 2002 lease. Although the lease between the defendant and its tenant is not determinative of the parties' obligations under the listing agreement between the plaintiff and defendant, the listing agreement did require that the defendant provide the plaintiff with a copy of the executed lease. There is no allegation that the defendant breached the listing agreement by failing to provide the plaintiff with a copy of the 1997 lease. As such, the plaintiff would have been aware of the procedure and terms for renewal of the 1997 lease and apparently did not object to the renewal provisions in the document. We therefore conclude that the court's finding that there was no renewal of the 1997 lease was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.