ROBERT T. QUASIUS *v.* CHIYOKO T. QUASIUS
(AC 23882)

Schaller, Bishop and Berdon, Js.

Argued September 9, 2004—officially released February 1, 2005

*James H. Lee,* with whom, on the brief, was *Richard J. Pober,* for the defendant (appellant).

*Gregory M. Conte,* for the plaintiff (appellee).

*Opinion*

BERDON, J. The defendant, Chiyoko T. Quasius, appeals from the trial court's judgment dissolving her marriage to the plaintiff, Robert T. Quasius, awarding the plaintiff alimony and dividing the assets of the marriage. On appeal, the defendant claims that the court improperly concluded that the plaintiff did not violate the automatic stay provisions of Practice Book § 25-5. We disagree and affirm the judgment.

The relevant facts and procedural history of this appeal are as follows. The plaintiff filed a complaint seeking the dissolution of his marriage to the defendant, an equitable division of the marital assets and other relief. After evaluating the evidence and the credibility of the parties, the court found that the marriage had broken down irretrievably, divided the marital assets and ordered the payment of alimony by the defendant to the plaintiff. The defendant filed this appeal. Pursuant to Practice Book § 66-5, the defendant filed a motion for articulation, in which she asked the trial court to articulate, among other things, whether it concluded that the plaintiff had violated the automatic order provisions of Practice Book § 25-5[1] by sustaining considerable losses in the stock market. The court explained that the testimony, exhibits, affidavits and especially

---

[1] Practice Book § 25-5 (a) provides in relevant part: "The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage . . . . (1) Neither party shall sell, transfer, encumber . . . conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorneys' fees in connection with this action . . . ."

the credibility of the witnesses supported the orders set forth in its memorandum of decision. Pursuant to Practice Book § 66-7, the defendant timely filed a motion for review by this court of the trial court's articulation. We granted the defendant's motion for review but denied the relief requested.

First we set forth our standard of review. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 481, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004). "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Bijur* v. *Bijur*, 79 Conn. App. 752, 758, 831 A.2d 824 (2003). "This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, supra, 481–82.

The court found that "any investments by the plaintiff were *a continuation of prior activities* of which the defendant was aware and had information readily available. Furthermore, the defendant made no efforts to stop the investments and provided no proof that the losses were caused by anything other than a decline in the market or that similar losses would not have

occurred if no trades [had] been made." (Emphasis added.) In response to the defendant's motion for articulation, the court explained that the decision "was based upon all of the testimony, exhibits and sworn financial affidavits presented at trial. The credibility of the witnesses played an important part in the court's decision." On the basis of the facts presented, the court made a reasonable conclusion that the plaintiff's unprofitable stock market trades fell within the "usual course of business" exception to the automatic order.[2] The defendant failed to present any evidence that would have permitted the court to conclude that the plaintiff incurred the losses due to activity expressly stayed by the automatic order. The two financial affidavits submitted by the plaintiff, one dated February 22, 2001, and the other dated September 26, 2002, revealed more than $96,000 in losses in the stock market, but as indicated in the court's memorandum of decision, the defendant did not present any evidence that the losses were the result of anything other than a decline in the market. After considering the record, briefs and arguments of the parties, we conclude that the trial court did not abuse its discretion by concluding that the plaintiff's unsuccessful stock market trades did not violate the automatic orders.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] Practice Book § 25-5 (a) sets forth the procedure and substance of the automatic order at issue in this case. See footnote 1.