******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SUSAN CUNNIFFE *v.* MARK CHARLES CUNNIFFE
(AC 34940)

Beach, Sheldon and Keller, Js.

*Argued November 15, 2013—officially released May 27, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Emons, J. [motion for contempt;
motion for order]; Adelman, J. [judgment].)

*David V. DeRosa*, with whom was *Paul Greenan*, for
the appellant (plaintiff).

*Karen L. Dowd*, with whom were *Brendon P. Lev-
esque* and, on the brief, *Melissa J. Needle*, for the appel-
lee (defendant).

*Opinion*

KELLER, J. In this amended appeal, the plaintiff, Susan Cunniffe, appeals following the judgment of the trial court dissolving her marriage to the defendant, Mark Charles Cunniffe.[1] The plaintiff claims that the court improperly (1) allowed dissolution proceedings to advance in violation of an appellate stay, (2) failed to hold the defendant in contempt for violating a discovery order, and (3) granted a motion for a protective order that prevented the plaintiff from obtaining copies of relevant financial records. We disagree and affirm the judgment of the trial court.

The following facts, which either were found by the court or are undisputed in the record, and procedural history are germane to our resolution of the plaintiff's claims. The plaintiff and the defendant married in 2002. During the marriage, the plaintiff was employed in a variety of positions with small investment management firms, earning as much as $70,000 annually. The defendant was employed in companies owned by his father, Maurice Cunniffe, who has significant personal wealth and real estate holdings. The defendant's reported annual earnings during the marriage never exceeded $25,000.

In October, 2009, the plaintiff commenced this action to dissolve the parties' marriage.[2] For more than two and one-half years, the parties engaged in extensive and heated litigation. Throughout the dissolution proceedings, the plaintiff asserted her belief that the defendant and his father have conspired to hide millions of dollars in marital assets in various family trusts.

In October, 2010, the plaintiff filed a motion to compel discovery in which she asked the court to order the defendant to sign an Internal Revenue Service form 4506 release (IRS releases) for "each and every entity in which the defendant holds a financial interest," thereby authorizing the IRS to release tax returns for those entities directly to the plaintiff. The plaintiff argued in her motion that she needed the tax returns because the defendant allegedly had failed to disclose fully all of his financial interests with respect to a number of trusts created by the defendant's mother, Jane M. Cunniffe, prior to her death in 2008. In addition to seeking the IRS releases for six trusts specifically identified in the motion to compel, the plaintiff also sought releases covering the federal and state tax returns of the mother's estate.

The plaintiff's motion to compel was heard by the court, *Malone, J.*, on November 8, 2010, along with the plaintiff's motion for an award of pendente lite alimony.[3] With respect to the motion to compel, the court indicated on the record that it was uncertain whether the defendant was authorized to sign all of the IRS releases sought by the plaintiff. Without deciding that particular

issue, the court instructed the plaintiff to obtain whatever IRS releases that she believed were appropriate for the defendant's signature and to provide those forms to the defendant's counsel; counsel was instructed "to provide them to [the defendant] for signing."[4]

On February 2, 2012, the plaintiff filed a motion for contempt, in which she argued that the defendant's counsel and/or the defendant had refused to comply with the court's November 8, 2010 orders with respect to the IRS releases. On May 7, 2012, the parties appeared before the court, *Emons, J.*, for a hearing on the motion for contempt.[5] The defendant was not present. See footnote 3 of this opinion. The defendant's counsel suggested that the court mark the motion over until May 17, 2012, when the parties were scheduled to appear for a hearing on discovery related matters. The defendant's counsel also explained that the defendant already had signed an IRS release with respect to his personal tax returns, but that he could not sign the releases for the various trusts because the IRS releases contained instructions that they could be signed only by a person authorized to receive the tax returns, and he was not so authorized.

The plaintiff did not object to the court continuing the motion for contempt to the following week, but indicated that the defendant's attendance would be necessary for the court properly to make a finding of wilfulness. The court decided that although it was necessary to resolve the continuing dispute over the production of the IRS releases prior to trial, the contempt aspect of the motion—namely, whether the defendant was in wilful violation of an existing court order—could be bifurcated from the discovery dispute. It ordered that it would take up the discovery aspect of the motion when it heard the parties' other outstanding discovery issues at the May 17, 2012 hearing, but that the contempt issue could be heard later as part of the upcoming dissolution trial. The plaintiff filed an appeal, AC 34588, on May 16, 2012, challenging the court's ruling continuing to a later date its consideration of the motion for contempt.

On May 17, 2012, the parties appeared as scheduled before Judge Emons, who heard arguments from the parties on a multitude of discovery related motions. At the beginning of that hearing, the plaintiff notified the court that she had filed an appeal from what the plaintiff characterized as the court's refusal to hear her motion for contempt. The court observed that it had not denied the plaintiff the ability to present her motion, but, rather, had only postponed a final hearing as to the contempt issue until trial. When the plaintiff suggested that the current hearing regarding discovery matters could not go forward because an appellate stay of execution was in effect, the court stated that it was lifting any such stay.

The discovery motions included several motions for a protective order filed by third party witnesses, including the defendant's father and brother.[6] The defendant's father and brother sought protective orders limiting their obligations to produce personal financial documents that the plaintiff had subpoenaed for production at their depositions, including copies of the disputed family trusts. The parties also eventually returned to the issue of the IRS releases. The defendant again suggested that he was in compliance with Judge Malone's order because he had provided the plaintiff with a release for everything that he was authorized to release. The plaintiff argued that she still needed releases for the tax returns of the various trusts in which she maintained the defendant had a beneficiary interest. In resolving the various motions for a protective order and the issue of the IRS releases, the court assured the plaintiff that it intended to order production of all documents pertaining to anything in which the defendant had a financial interest, but that it would not require the disclosure of financial documents or the signing of releases for anything unrelated to some identified interest of the defendant. To that end, the court indicated that it would conduct an in camera review of all contested trust documents to determine whether they pertained in any way to a financial interest of the defendant, whether the trust or other related financial documents should be disclosed to the plaintiff, and whether the plaintiff was entitled to additional IRS releases. The plaintiff later amended AC 34588 to include a challenge to several of the court's May 17, 2012 discovery orders.[7] The plaintiff also filed a motion with this court for review of the trial court's ruling with respect to any appellate stay that might have been in effect as a result of the filing of AC 34588. At a status conference on June 6, 2012, the trial court reiterated its intent to conduct an in camera review of documents in order to resolve the parties' continuing dispute over the disclosure of trust documents and IRS releases. The plaintiff never objected to the proposed in camera review procedure, either at the May 17, 2012 hearing or the June 6, 2012 status conference, nor did she raise it as an issue in her amended appeal.

Judge Emons conducted an in camera review of the disputed documents, which were provided to her by the parties and by the third party witnesses.[8] At a subsequent hearing on June 28, 2012, the court identified on the record the documents that it had reviewed, ultimately ruling on the basis of that review that it had not found anything pointing to the existence of a divisible asset for the purposes of marital dissolution. The court stated: "My order is that I am not going to order any IRS authorizations for any of these documents, and I am not going to order that [the plaintiff] be given a copy of any of those documents. I'll state it again that you have in your possession copies of four of those

documents—unsigned on a couple of occasions.

"The reason for my ruling is that . . . I have had the opportunity to carefully review all of the documents and that even though [the defendant's] name appears in some of those documents, it appears to this court that he does not have a present interest in anything from any of these documents. All of his interests, if they become real at all, are purely speculative, totally contingent. It is clear that he does not have a present interest in anything with any of these documents. So that is my ruling." On July 2, 2012, the plaintiff filed her second amended appeal in AC 34588 from the court's June 28, 2012 orders.

The dissolution trial commenced on July 23, 2012, before the court, *Adelman*, *J.* The court began by addressing a few preliminary matters. First, it addressed a notice of automatic stay filed by the plaintiff on July 17, 2012. The plaintiff argued that the dissolution trial could not go forward because automatic stays of execution had arisen as a result of the filing of her appeal and the two amended appeals, and that although Judge Emons had ordered the lifting of any stay that might be in effect, a motion for review of that order remained pending before the Appellate Court. The defendant argued that because the plaintiff had not appealed from a final judgment, no stay had ever come into effect, and that the plaintiff simply was trying to delay the trial. The defendant also argued that even if there was a stay, it was only a stay of proceedings to carry out the orders from which the plaintiff had appealed, not a stay of all dissolution proceedings, as the plaintiff appeared to be suggesting. The court ruled on the basis of its review of all relevant transcripts, motions and our rules of practice that there was no stay in place and that the matter could go forward.

The court next indicated that it was ready to proceed on the plaintiff's February 2, 2012 motion for contempt. Both the plaintiff and the defendant provided testimony. The plaintiff's position was that Judge Malone had ordered the defendant to sign all IRS releases provided to him with respect to the various trusts and that, as a beneficiary of those trusts, the defendant was authorized to sign the releases, but failed to do so as ordered. The defendant's position was that Judge Malone had issued his ruling without looking at the IRS release form, that in signing the IRS release form the defendant had to certify, under penalty of perjury, that he was a party authorized to obtain the relevant tax returns, and that, accordingly, he only had signed the one IRS release he believed he was authorized to sign.[9] The following day, the court issued an oral decision, denying the motion for contempt and sustaining the objection of the defendant. Although the court found that the plaintiff had proven that the defendant had not signed all of the IRS releases provided to him, it also found that the

original order to sign the releases was not clear and unambiguous, and that "[t]here certainly exists a sufficient conflict between the perjury warning on the IRS authorization form, and the language offered by the plaintiff in [26 U.S.C. § 6103], to create an ambiguity in the mind of the court, and which would, therefore, preclude a finding of wilfulness."

On July 25, 2012, this court granted a motion filed by the defendant to dismiss AC 34588 as amended for lack of a final judgment and, accordingly, ordered that no action was necessary on the plaintiff's motion for review of Judge Emons' order lifting any appellate stay that may have been in effect. The plaintiff filed a new appeal on August 13, 2012, challenging the court's July 24, 2012 denial of her motion for contempt. See footnote 1 of this opinion. The court issued a memorandum of decision on August 31, 2012, in which it rendered a final judgment dissolving the parties' marriage. This amended appeal from the judgment of dissolution followed.

I

The plaintiff first claims that Judge Emons and Judge Adelman improperly exercised jurisdiction by allowing dissolution proceedings to advance forward in violation of an appellate stay. The defendant counters that the court could not have acted in violation of an appellate stay because no valid appellate stay was ever in effect, and, even if an appellate stay was in effect, it would not have stayed further proceedings before the court. We agree with the defendant.

Whether an appellate stay of execution was in effect during the underlying dissolution proceedings requires us to consider our rules of practice and case law concerning appellate stays. "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010).

Practice Book § 61-11 (a) provides in relevant part that after an appeal has been filed, "proceedings *to enforce or carry out the judgment or order* shall be automatically stayed . . . until the final determination of the cause. . . ." (Emphasis added.) Our Supreme Court has suggested, however, that no enforceable appellate stay is created when an appeal is taken from an interlocutory ruling that is not an immediately appealable final judgment. See *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 192 Conn. 1, 5, 469 A.2d 778 (1984) ("[b]ecause the order appointing the rent receiver was not immediately appealable, the defendant's claim to a stay of the receivership pending an

appeal is untenable"). We take this opportunity to hold definitively that no enforceable appellate stay of execution results from the filing of a jurisdictionally infirm appeal.

Except in certain limited circumstances not relevant to our analysis,[10] a valid final judgment is required to invoke this court's jurisdiction. See General Statutes § 52-263; *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 651–52, 954 A.2d 816 (2008). "[L]imiting appeals to final judgments serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings." (Internal quotation marks omitted.) *Brown & Brown, Inc.* v. *Blumenthal*, supra, 653. Logically, it follows that no appellate stay would be created by taking an appeal from an order that is not immediately appealable because such an appeal, which fails to properly invoke our appellate jurisdiction, would be void ab initio and, as such, could not trigger a Practice Book § 61-11 stay of execution. To conclude otherwise would risk undermining our important public policy disfavoring a disruptive and inefficient judicial process because it would provide parties with a tool to unduly delay proceedings by filing premature appeals. See *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 258, 520 A.2d 605 (1987) (noting final judgment rule is by-product of concern for efficient operation of judicial system and policy against piecemeal litigation). Thus, in considering whether the court in the present case acted in violation of an appellate stay, we first consider whether the plaintiff filed a jurisdictionally viable appeal. We conclude that she did not.

All the appeals and amended appeals relevant to the plaintiff's claim that the trial court acted in violation of an appellate stay were taken from interlocutory orders of the court. "[C]ertain otherwise interlocutory orders may be final judgments for appeal purposes, and the courts may deem interlocutory orders or rulings to have the attributes of a final judgment if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, [191 Conn. 27, 31, 463 A.2d 566 (1983)]. . . . Under *Curcio*, interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding, or (2) so concludes the rights of the parties that further proceedings cannot affect them." (Citations omitted; internal quotation marks omitted.) *State* v. *Fielding*, 296 Conn. 26, 37–38, 994 A.2d 96 (2010). "The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding." (Internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 496, 857 A.2d 893 (2004), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed 2d 723 (2005). Satisfaction of the second prong of the *Curcio* test "requires the parties

seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal. . . . An essential predicate to the applicability of this prong is the identification of jeopardy to [either] a statutory or constitutional right that the interlocutory appeal seeks to vindicate." (Citation omitted; internal quotation marks omitted.) Id., 497.

AC 34588 was taken from Judge Emons' May 7, 2012 order postponing to a later date the consideration of the motion for contempt, which alleged a failure to comply with discovery orders. The court's May 7, 2012 order, which was issued on the basis of a pleading filed in the context of an ongoing dissolution action, certainly did not terminate a separate and distinct proceeding so as to satisfy the first prong of *Curcio*. The order also did not conclude any presently held statutory or constitutional rights of the parties vis-á-vis the motion for contempt. The court clearly indicated its intent to adjudicate that motion at a later date, thus signaling that further proceedings with the potential to affect any rights of the parties would be necessary. The May 7, 2012 order also is readily distinguishable from the situation before the court in *Ahneman* v. *Ahneman*, 243 Conn. 471, 706 A.2d 960 (1998), a case relied on by the plaintiff.

In *Ahneman*, our Supreme Court determined that a court's outright refusal to consider a party's postdissolution motion for contempt was the functional equivalent of a denial of that motion and, thus, immediately appealable. Id., 480. The court in the present case, however, did not refuse to rule on the motion altogether. Rather, it chose to put off consideration of the motion to a later time—a decision that was well within the court's discretion to make. See *Marshall* v. *Marshall*, 71 Conn. App. 565, 575, 803 A.2d 919 ("matters of judicial economy, docket management and control of courtroom proceedings are particularly within the province of a trial court"), cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002). "Because a matter by definition cannot be simultaneously continued and concluded, it is dubious that a continuance would constitute a final judgment." *Harvey* v. *Wilcox*, 67 Conn. App. 1, 6, 786 A.2d 533 (2001).

Further, our consideration of the nature of the motion for contempt at issue in AC 34588 also aides us in distinguishing that appeal from the appeal before the court in *Ahneman*. In *Ahneman*, the defendant wife sought to hold the plaintiff husband in contempt over financial issues. *Ahneman* v. *Ahneman*, supra, 243 Conn. 474–75. Our Supreme Court noted that financial rulings in divorce proceedings often are immediately appealable whether made pendente lite, as part of the judgment of dissolution, or postjudgment. Id., 479. By

contrast, the motion for contempt at issue in AC 34588 involved a discovery order. It is well established in our case law that interlocutory rulings on motions related to discovery generally are not immediately appealable. See *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 628, 692 A.2d 794 (1997); *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 255; *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226, 429 A.2d 478 (1980). This is because such interlocutory rulings ordinarily do not terminate separate and distinct proceedings, and any discovery abuses or errors can be remedied, if necessary, by ordering a new trial following an appeal by the aggrieved party from a final judgment. In sum, the original appeal in AC 34588 was not taken from an appealable final judgment and therefore resulted in no appellate stay.

The plaintiff later filed amended appeals in AC 34588 that challenged additional interlocutory orders concerning discovery, including the court's June 28, 2012 decision not to order the production of the documents reviewed in camera. See footnote 7 of this opinion. Those discovery orders also were not immediately appealable under the *Curcio* test pursuant to the rationale set forth regarding the original appeal in AC 34588. Accordingly, the filing of the amended appeals in AC 34588 does not change our analysis of whether an appellate stay of execution existed that would have limited the court's jurisdiction.

Finally, during the pendency of the dissolution trial, the plaintiff filed her initial interlocutory appeal from the court's denial of her motion for contempt. See footnote 1 of this opinion. Again, because the motion for contempt was filed as a pleading in an ongoing dissolution action and the merits of the motion related to discovery in that ongoing matter, the court's action on the motion was not severable from the central cause of action, nor did it terminate a separate and distinct proceeding. Accordingly, that interlocutory ruling failed to satisfy the first prong of the *Curcio* test.

Here, once a judgment of dissolution was rendered, the plaintiff would have had an opportunity to challenge the trial court's ruling that the defendant was not in contempt. See, e.g., *Quasius* v. *Quasius*, 87 Conn. App. 206, 866 A.2d 606 (whether party in dissolution action violated automatic orders reviewed on appeal after judgment of dissolution rendered), cert. denied, 274 Conn. 901, 876 A.2d 12 (2005). The plaintiff, in fact, has done so in the present amended appeal. Thus, the court's denial of the motion for contempt did not threaten the preservation of any cognizable right that would be irretrievably lost absent an immediate appeal, and, therefore, does not satisfy the second prong of *Curcio*.[11] Because we conclude that neither AC 34588 as amended nor the plaintiff's initial appeal from the denial of her motion for contempt were taken from

immediately appealable final judgments, no appellate stay was ever in effect during the pendency of this action, and the court could not have acted in violation of a stay that never existed.[12] Accordingly, the plaintiff's claim is without merit.

## II

The plaintiff next claims that the court improperly denied her motion for contempt in which she alleged that the defendant had violated Judge Malone's November 8, 2010 order by failing to sign all IRS releases provided to the defendant's counsel by the plaintiff. In particular, the plaintiff argues that the court erroneously found that the November 8, 2010 order was ambiguous and that the defendant had not acted in wilful violation of the order. We are not persuaded that Judge Malone's order was clear and unambiguous, and, therefore, conclude on that basis that the court properly declined to hold the defendant in contempt.

"Guided by the principles that limit our review, our analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted; internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

"Civil contempt is committed when a person violates an order of court which requires that person in *specific and definite language* to do or refrain from doing an act or series of acts. . . . Whether an order is sufficiently clear and unambiguous is a necessary prerequisite for a finding of contempt because [t]he contempt remedy is particularly harsh . . . and may be founded *solely* upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . It is also logically sound that a person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 695

The plaintiff argues that the court's November 8, 2010

ruling can only be read as requiring the defendant to sign every IRS release provided to him and as having left it to the IRS to determine if he properly was authorized to request a given tax return. The defendant, on the other hand, argues that the court only intended that he sign releases for those tax returns that he was authorized to receive. On the basis of our de novo review of the November 8, 2010 transcript, we conclude that Judge Malone's instructions to the parties did not amount to a clear and unambiguous order of the court and, thus, could not be the basis for a finding of contempt.

The relevant motion before the court at the November 8, 2010 hearing was the plaintiff's motion to compel. The relief requested was a court order requiring the defendant to sign IRS releases for each and every entity in which he held a financial interest. It is not in dispute that at the time the court issued its ruling, the court had not reviewed a copy of the relevant IRS release form or any of the instructions therein regarding its proper execution. The court mentioned several times on the record that it was unsure whether the defendant was authorized to sign all of the releases that the plaintiff sought. After hearing argument from the parties, the court sought to resolve the matter before it by instructing the plaintiff to obtain whatever she thought were the appropriate IRS forms and to provide the same to the defendant's counsel. The court further instructed that once counsel received the forms from the plaintiff, counsel was "to provide them to [the defendant] for signing." In concluding the hearing, the court stated: "And the IRS will provide information if he is an authorized person, if he's not then he's not, all right. Because a person is a beneficiary doesn't necessarily mean they're an authorized individual to get information."

The court never granted the motion to compel outright, which it could have done if it had intended to order the defendant simply to sign all the releases. It also did not use specific and direct language ordering the defendant to sign each and every one of the IRS releases that was provided to him. The court's order reasonably could be read as merely reassuring the plaintiff that the defendant's counsel would present any releases provided to her by the plaintiff to the defendant. Because we have determined on the basis of our plenary review that, when read in the context of the full hearing, the court's oral ruling is ambiguous as to whether the defendant was obliged to sign all releases provided by the plaintiff or only those which he was authorized by law to sign, we conclude that the court did not err in denying the motion for contempt.

### III

Finally, the plaintiff claims that, following the Judge Emons' in camera review, she improperly granted a protective order in favor of the defendant and his father

regarding their need to disclose certain trust documents or to sign IRS releases for related tax returns. On the basis of our own review of those documents viewed by the court in camera, we are not convinced that the court's decision was in error.

Practice Book § 13-2 generally covers the scope of discovery in civil actions, and provides in relevant part: "In any civil action . . . a party may obtain in accordance with the provisions of this chapter discovery of information or disclosure, production and inspection of papers, books, documents and electronically stored information material to the subject matter involved in the pending action, which are not privileged, whether the discovery or disclosure relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, and which are within the knowledge, possession or power of the party or person to whom the discovery is addressed. Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure. It shall not be ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. . . ." Whether to grant or deny a discovery request "rests in the sound discretion of the court. . . . The court's discretion applies to decisions concerning whether the information is material, privileged, substantially more available to the disclosing party, or within the disclosing party's knowledge, possession or power . . . ." (Citations omitted.) *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 57–60, 459 A.2d 503 (1983).

Practice Book § 13-5 provides in relevant part: "Upon motion by a party from whom discovery is sought, and for good cause shown, the judicial authority may make *any order which justice requires* to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . that the discovery may be had only on specified terms . . . ." (Emphasis added.) "[T]he [trial] court's inherent authority to issue protective orders is embodied in Practice Book § 13-5. . . . The use of protective orders and the extent of discovery [are] within the discretion of the trial judge. . . . We have long recognized that the granting or denial of a discovery request . . . is subject to reversal only if such an order constitutes an abuse of that discretion." (Citation omitted; internal quotation marks omitted.) *Coss* v. *Steward*, 126 Conn. App. 30, 46, 10 A.3d 539 (2011). Further, when, as in the present case, the court has utilized in camera review of documents in exercising its broad discretion regarding the extent of discovery and whether to issue a protective order, the issue of whether

the court abused its discretion in refusing to release those records necessitates that this court conduct its own in camera review of the documents. See, e.g., *State* v. *Johnson*, 137 Conn. App. 733, 764, 49 A.3d 1046, cert. granted on other grounds, 307 Conn. 927, 55 A.3d 568 (2012), cert. granted on other grounds, 308 Conn. 938, 66 A.3d 881 (2013).

The plaintiff first argues that, procedurally, it was improper for the trial court to have conducted an in camera review of the disputed documents, all of which she claims were not privileged and thus discoverable. The plaintiff did not make that argument before the court prior to learning of the outcome of the in camera review. In fact, the plaintiff agreed with the court's decision to review the documents in camera. We therefore decline to review in this appeal any claim of error related to the procedure employed by the court, in which the plaintiff acquiesced. "The court shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Nweeia* v. *Nweeia*, 142 Conn. App. 613, 618, 64 A.3d 1251 (2013). Accordingly, we limit our review to the plaintiff's argument that the court improperly decided not to order the release of the documents examined by the court in camera as part of discovery or to require the defendant to sign additional IRS releases.

Having reviewed the sealed documents contained in the court file, we conclude that the court did not abuse its discretion by declining to order the defendant and the third parties to produce copies of the various disputed trust documents to the plaintiff or to execute related IRS releases. We agree with the court's finding that nothing in those documents suggests the existence of any divisible marital asset, nor was it reasonably likely that the disclosure of the trust documents reviewed by the court would have led the plaintiff to other relevant evidence admissible in the dissolution action. Likewise, it is not reasonably likely that the plaintiff would have benefitted from the signing of additional IRS releases for the tax returns of the undisclosed trusts.

The original appeal is dismissed for lack of a final judgment; the judgment in the amended appeal is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff filed her original appeal from an interlocutory order of the court denying a motion for contempt concerning a discovery matter. After the judgment of dissolution was rendered, the plaintiff amended the original appeal to include the dissolution judgment. On her amended appeal form, the plaintiff reasserted her intention to challenge the court's denial of her motion for contempt. For reasons set forth in more detail later in this opinion, we conclude that the plaintiff's original, interlocutory appeal was jurisdictionally defective because it was not taken from an appealable final judgment. See General Statutes § 52-263; *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 628, 692 A.2d 794 (1997) (generally no right to immediate appeal from order issued upon motion related to discovery). Accordingly, we dismiss the original appeal for lack of subject matter jurisdiction. The amended appeal nevertheless remains properly before us because it was filed following the dissolution judgment, "from which an original appeal properly could have been filed." Practice Book § 61-9; *Brehm* v. *Brehm*, 65 Conn. App. 698, 701 n.3, 783 A.2d 1068 (2001); see also *Midland Funding, LLC* v. *Tripp*, 134 Conn. App. 195, 196 n.1 (2012) (original appeal dismissed for lack of final judgment, but claims reviewable under amended appeal pursuant to Practice Book § 61-9 because amended appeal taken after final judgment rendered and raised issues presented in original appeal). Because the plaintiff identified her challenge to the denial of her motion for contempt in her amended appeal, any claim of error with respect to that ruling is properly before us.

We note further that the plaintiff filed a second amended appeal from a postjudgment order of the court denying a motion for permission to listen to audiotape recordings of various trial court proceedings. The plaintiff claimed in the second amended appeal that the court's decision denying her motion for permission precluded her from verifying the authenticity of the trial transcripts and, thus, from perfecting the record on appeal. In response to a motion filed by the defendant, in which he argued that the claims raised in the second amended appeal concerned the perfection of the record and, thus, should have been brought by way of a motion for review pursuant to Practice Book § 66-6 and not a direct appeal, this court dismissed the second amended appeal and struck the corresponding fourth claim in the plaintiff's brief. Consequently, that issue is not before us.

[2] The plaintiff later withdrew her complaint, and the action proceeded on the defendant's cross complaint for dissolution of the marriage.

[3] The defendant was not present at the hearing because he was incarcerated, serving a two year sentence for drunk driving; however, he was represented by counsel. Because of the defendant's absence, the court ordered the motion for pendente lite alimony marked over to a later date, indicating that it would need to hear from the defendant with respect to his financial situation.

[4] The court filed a portion of the transcript from the November 8, 2010 hearing representing its ruling with respect to the motion to compel. That transcript provides in relevant part:

"The Court: My question to [the defendant's counsel] is, if you provide the authorization signed by your client, and this information set off either he's an authorized representative of the estate with the IRS—of those trusts of which the IRS would recognize and provide information or he is not; correct?

"[The Defendant's Counsel]: If she wants to produce these authorizations, she can produce them, I mean, that's fine. I'll have to figure out how to get him to sign them.

"The Court: All right. Ma'am, why don't you obtain the appropriate, what you believe the appropriate Internal Revenue Service . . .

"[The Plaintiff]: Forms.

"The Court: Forms for these various trusts, provide them to [the defendant's counsel], and then she's to provide them to [the defendant] for signing.

"[The Plaintiff]: Okay.

"The Court: And the IRS will provide information if he is an authorized person, fine, if he's not then he's not, all right. Because a person is a beneficiary doesn't necessarily mean they're an authorized individual to get information."

[5] We note that at this juncture the plaintiff attempted to perfect the appellate record by filing a number of transcripts without properly designating them as part of the record in accordance with Practice Book §§ 63-4 (a) (2) and 63-8. Those transcripts included the transcript of the May 7, 2012 hearing as well as transcripts of hearings that occurred on July 25, 2011, and May 17, May 22 and June 28, 2012. In response to a party motion, this court

ordered the improperly designated transcripts and the plaintiff's references to those transcripts in her brief stricken. Having now thoroughly reviewed the entire record, we have discovered that, except for the June 28, 2012 hearing, signed copies of the aforementioned transcripts were filed by the court as part of the trial court record. Further, the relevant portion of the June 28, 2012 transcript was attached as an exhibit to a pleading in the court file. As those transcripts are a part of the record as a whole, they are available to us for review, despite the plaintiff's failure to properly designate them for appeal.

[6] The other third party witnesses were John Van Dyke and Edward Massey.

[7] On the amended appeal form, the plaintiff indicated that she was challenging the court's refusal to hear her motion for contempt, the court's order requiring the plaintiff to produce certain of her medical records without first reviewing those records in camera to determine their relevancy, and the court's granting of a protective order regarding the disclosure of certain bank records.

[8] All documents reviewed by the court properly were preserved for appeal as a sealed exhibit.

[9] The court asked the parties to submit short briefs clarifying their arguments as to whether the defendant had the authority to sign the releases. The following day, the court indicated on the record that counsel had complied with its request by sending briefs to the court by e-mail. Copies of those briefs, however, were not included as part of the trial court record.

[10] Insofar as the subject matter jurisdiction of this state's appellate courts is governed by statute, the legislature has provided for interlocutory appeals or other means of interlocutory appellate review in certain situations. See, e.g., General Statutes § 52-278*l* (prejudgment remedies); General Statutes § 54-63g (review of bail); General Statutes § 54-47g (a) (grand jury disclosures); General Statutes § 51-164x (court closure orders); General Statutes § 52-405 (accounting); General Statutes § 54-56e (f) (denial of motion to dismiss after completion of accelerated rehabilitation program).

[11] We note that there is language in our case law that arguably could be read to indicate that the denial of a motion for contempt in the context of an ongoing dissolution action is a final judgment. In *Ahneman*, which, as previously indicated, involved the trial court's failure to act on a *postjudgment* motion for contempt, the court, after discussing the general appealability of financial orders in dissolution actions, broadly states that "[i]t is also well established that a trial court *ruling* on a motion for contempt in a marital dissolution action is a final judgment for purposes of appeal." (Emphasis added.) *Ahneman* v. *Ahneman*, supra, 243 Conn. 479. That language could be read to suggest that *all* contempt rulings in dissolution cases are immediately appealable, whether rendered pendente lite or postjudgment. Citing the *Ahneman* language, this court entertained an appeal from the *granting* of a motion for contempt for failure to comply with pendente lite orders of child support and alimony. See *Baker* v. *Baker*, 95 Conn. App. 826, 827 n.1, 898 A.2d 228 (2006). In *Smith* v. *Smith*, 151 Conn. 292, 296, 197 A.2d 65 (1964), which predated *Ahneman* and is cited therein, the Supreme Court permitted an appeal to lie from an interlocutory ruling that *denied* a motion for contempt based on a failure to comply with orders regarding pendente lite alimony. We do not view *Ahneman*, *Baker*, or *Smith* as controlling our decision in the present case.

In *Ahneman*, the certified issue before the court was whether the trial court's refusal to rule on a *postjudgment* motion for contempt was a final judgment. *Ahneman* v. *Ahneman*, supra, 243 Conn. 472. When read in context, we do not view the court's dicta to mean that all interlocutory contempt rulings in dissolution cases are immediately appealable. In concluding that the trial court's refusal to rule on the motion for contempt was a final judgment, the Supreme Court essentially decided in *Ahneman* that the trial court's inaction was a ruling that satisfied *Curcio*. Id., 480. In the present case, we have determined that the *Curcio* test was not satisfied. *Baker* and *Smith* are also readily distinguishable in that the motions for contempt at issue in those cases were filed in an effort to enforce pendente lite support or alimony orders. Pendente lite alimony or support orders have been deemed immediately appealable because such "orders are designed to provide support during the pendency of the action and . . . once a final judgment enters, the pendente lite orders cease to exist because their purpose has been extinguished at the time the dissolution judgment is entered." *Angle* v. *Angle*, 100 Conn. App. 763, 768–69, 920 A.2d 1018 (2007). The rationale for permitting an immediate appeal from a pendente lite alimony or support order logically could extend to an interlocutory ruling on a contempt motion

to enforce such an order. That rational, however, is not applicable in the present matter. Here, the motion for contempt did not relate to a financial order of support or alimony that would cease to exist once the dissolution judgment was rendered. Rather, the plaintiff here sought enforcement of a discovery order, an issue that the plaintiff can and has raised in her amended appeal from the judgment of dissolution.

[12] Even if, arguendo, we agreed with the plaintiff's premise that an appellate stay pursuant to Practice Book § 61-11 was created each and every time that she appealed or filed an amended appeal from a nonfinal, interlocutory order of the court, the resulting stay of execution would not have automatically barred all further judicial proceedings in the trial court as the plaintiff suggested throughout the underlying action. Only those proceedings "to enforce or carry out a court's judgment" are stayed by the filing of an appeal. Practice Book § 61-11 (a). Thus, only further proceedings that would act to effectuate a challenged ruling would be stayed. Our Supreme Court previously has explained that our Superior Court has concurrent jurisdiction to hold hearings and to act upon motions filed by parties in cases where an appeal is pending, even to the extent that its actions might render a pending appeal moot. See *Ahneman* v. *Ahneman*, supra, 243 Conn. 482–83. Because continuation of dissolution proceedings cannot be viewed as enforcing or carrying out any of the interlocutory orders from which the plaintiff appealed, the court would not have been acting in violation of a stay, even if one had existed.

––––––––––––––––––––––––––––