******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CURTIS WOOD *v*. DEBORAH WOOD
(AC 36307)

Gruendel, Alvord and Dupont, Js.

*Argued May 26—officially released October 27, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Shay, J.)

*Thomas M. Shanley*, for the appellant (plaintiff).

*Campbell D. Barrett*, with whom, on the brief, was
*John H. Van Lenten*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, Curtis Wood, appeals from the court's financial orders contained in the judgment of dissolution of his marriage to the defendant, Deborah Wood. The plaintiff's claims are that the trial court improperly (1) calculated the value of the marital estate, (2) divided the marital estate, and (3) ordered him to make payments that exceeded the amount of funds available to him. We affirm the judgment.

The record reveals the following facts and procedural history. The parties married on August 21, 2004. They have two surviving children of the marriage. On October 11, 2011, the plaintiff filed a complaint seeking the dissolution of his marriage to the defendant. The matter was tried to the court, *Shay, J.*, on July 23, July 25, and August 13, 2013. Both parties were represented by counsel and a guardian ad litem was appointed to represent the two minor children.

After marrying, the parties first resided at 51 Pound Ridge Road in Bedford, New York. The plaintiff inherited a one-third interest in the Pound Ridge Road property and purchased the remaining two-thirds interest from his aunts. The parties sold the Pound Ridge Road property and moved to 47 Lafayette Place, Unit 6A, a condominium unit in Greenwich. The plaintiff purchased Unit 6A with funds from the sale of the Pound Ridge Road property. A few months after moving to Unit 6A, the plaintiff inherited 8 Grove Lane in Greenwich and the parties moved to the Grove Lane property. At that time, the Grove Lane property was subject to a mortgage. The Grove Lane property was the family residence for the remainder of the marriage.

After the parties moved to the Grove Lane property, the plaintiff traded Unit 6A at 47 Lafayette Place for Unit 6B at 47 Lafayette Place. He then sold a one-half interest in Unit 6B to Dr. Halina Snowball. Snowball financed her purchase by giving the plaintiff a promissory note secured by a mortgage. Snowball paid the plaintiff $2000 per month on the note. The plaintiff and Snowball rented out Unit 6B and the plaintiff received approximately $550 in rental income per month.

In 2011, the plaintiff subdivided a residential lot from the 8 Grove Lane property. The subdivided lot became 15 Dearfield Lane. The plaintiff then entered into an agreement with Nicholas Barile to build a residence on the Dearfield Lane lot. The plaintiff and Barile created a limited liability company, Dearfield, LLC (LLC), of which they were co-managing owners. The plaintiff transferred the Dearfield Lane lot to the LLC for $850,000. The LLC then borrowed $1,685,000 to fund the development of the property. The terms of the loan required the plaintiff to pay off the remainder of the mortgage on the Grove Lane property. He paid off the remaining mortgage, approximately $350,000, with

funds from the loan that he received as a credit against the $850,000 owed to him by the LLC for the transfer of the Dearfield Lane lot. Under the terms of the agreement with Barile, once the Dearfield Lane property was sold, and all liens, mortgages, and costs were paid from the proceeds of the sale, the plaintiff was to receive what was owed to him by the LLC for the transfer of the lot, as well as 90 percent of any profits.

On August 13, 2013, the final day of trial, the plaintiff testified that the LLC had received and accepted an offer for the Dearfield Lane property in the amount of $3,100,000. The plaintiff expected the sale of the Dearfield Lane property to close by the end of 2013, and that, after the closing, the plaintiff would receive $520,000 as the balance due for his original transfer of the lot to the LLC and an additional $58,000 in profits.

Additionally, the plaintiff received approximately $5000 in income per month from a family trust. He was not able to borrow against the trust or compel disbursements from it.

On November 8, 2013, the court issued its memorandum of decision. With respect to the three pieces of real estate, the court found that "the value of the [Grove Lane property] is $1,650,000; that the value of the [plaintiff's] share of the condominium at 47 Lafayette Place, Unit B, Greenwich . . . is $304,250; the principal balance of the promissory note from . . . Snowball is $150,000; *that as of the date of trial*, the [plaintiff] and his partner [Barile] have accepted an offer for the property on Dearfield Lane, Greenwich, but that there is no contract of sale; that the [plaintiff] is entitled to a credit of $520,000 prior to the division of any net proceeds; that [the plaintiff] is entitled to 90 percent of any profit; and that the court is unable to determine the profit and/or net profit, *if any*, therefrom as of the date of trial."[1] (Emphasis in original.) The court ordered that the plaintiff retain his interest in all three properties, "subject to any existing indebtedness, free and clear of any claims by the [defendant]." At the time of trial, neither the Grove Lane property nor Unit 6B at 47 Lafayette Place were subject to a mortgage.[2]

The court ordered the plaintiff to pay to the defendant "the sum of $750,000, as and for a lump sum property settlement, as follows: (a) Within sixty (60) days from the date of this Memorandum of Decision, the [plaintiff] shall pay to the [defendant] the sum of $350,000; and (b) within one (1) year from the date of this Order and annually thereafter, the sum [of] $100,000 until the lump sum property settlement is paid in full." The court also ordered the plaintiff to "contribute the sum of $20,000 toward the attorney's fees incurred by the [defendant] herein. Said fees shall be paid as follows: $10,000 within thirty (30) days from the date of this Memorandum of Decision; and the balance within thirty (30) days thereafter." Additionally, the court ordered the plaintiff

to pay 65 percent ($19,266) of the guardian ad litem's fees within thirty days of the date of the memorandum of decision. This appeal followed.

I

The plaintiff first claims that the court improperly calculated the value of the marital estate. Specifically, he argues that the court's finding that he was entitled to $520,000 from the sale of the Dearfield Lane property was clearly erroneous because the finding was based on "speculative profit from a nonexistent sale based on a nonexistent contract." In arguing that the court erroneously included the $520,000 in the value of the marital estate, the plaintiff essentially claims that the court improperly characterized the plaintiff's Dearfield Lane asset as distributable property for the purposes of General Statutes § 46b-81 and then improperly valued the asset at $520,000.

In order to resolve the question of whether the Dearfield Lane asset constitutes marital property for the purposes of § 46b-81, we must first determine the nature of the asset at issue. The crux of the plaintiff's argument is that the court's finding as to the $520,000 credit was clearly erroneous because he did not have "an enforceable right" to the funds, given that there was "a verbal offer only [for the lot], but there was no firm sales contract." Thus, the plaintiff appears to argue that the asset at issue is the sales contract that had not yet been executed for the Dearfield Lane property. The defendant, on the other hand, argues that the asset at issue is the plaintiff's interest in the LLC rather than the sales contract. We agree with the defendant.

The plaintiff entered into an agreement with Barile to build a residence on the Dearfield Lane lot. They created the LLC in which each of them was a managing owner. Under the terms of the agreement with Barile, the plaintiff transferred a subdivided portion of the Grove Lane property to the LLC for $850,000. That subdivided lot became the Dearfield Lane property. The plaintiff received partial payment for the transfer of the lot through funds from the LLC's construction mortgage. The agreement provided that the plaintiff would receive the remaining balance of $520,000 after the Dearfield Lane lot was sold and all liens, mortgages, and costs were paid. The agreement also stated: "This Agreement is, and on the date of Closing, will be a valid, legal and binding obligation, enforceable against the other, in accordance with its terms." The plaintiff's interest in the LLC is an asset. That interest is governed by the agreement with Barile, which provides the plaintiff with an enforceable right to the $520,000 credit. Accordingly, we conclude that the asset at issue is the plaintiff's interest in the LLC.

A

We now turn to the question of whether the court

properly characterized the plaintiff's interest in the LLC as distributable property pursuant to § 46b-81.[3] The question of whether the plaintiff's interest in the LLC constitutes marital property distributable under § 46b-81 raises a question of statutory interpretation over which we exercise plenary review. See *Mickey* v. *Mickey*, 292 Conn. 597, 613, 974 A.2d 641 (2009).

"The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us to first consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 613–14.

The plaintiff's claim requires us to examine the meaning of the term "property" for the purposes of § 46b-81. "The legislature has not seen fit to define this critical term, leaving it to the courts to determine its meaning through application on a case-by-case basis. Neither § 46b-81 nor any other closely related statute defines property or identifies the types of property interests that are subject to equitable distribution in dissolution proceedings. . . . [T]his court has generally taken a rather broad and comprehensive view of the meaning of the term property for purposes of equitable distribution. . . . We have not erased altogether, however, the limitations inherent in the term. We continue to recognize that the marital estate divisible pursuant to § 46b-81 refers to interests already acquired, not to expected or unvested interests, or to interests that the court has not quantified." (Citations omitted; internal quotation marks omitted.) Id., 618–19.

"[Section] 46b-81 applies only to presently existing property interests, not mere expectancies. . . . An expectancy is only the bare hope of succession to the property of another, such as may be entertained by an heir apparent. . . . [S]uch a hope is inchoate. *It has no attribute of property*, and the interest to which it relates is at the time nonexistent and may never exist. . . . The term expectancy describes the interest of a

person who merely foresees that he might receive a future beneficence . . . . [T]he defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Krafick* v. *Krafick*, 234 Conn. 783, 797, 663 A.2d 365 (1995).

The plaintiff's interest in the LLC was previously acquired during the term of the marriage and was presently existing at the time of trial. He possessed a contractual, enforceable right to the funds owed to him by the LLC under the terms of the agreement with Barile. We recognize that his receipt of the funds was contingent upon future events, i.e., the sale of the Dearfield Lane property at such a price that there would be enough proceeds from the sale for the LLC to pay off the liens, mortgages, and costs *and then* to pay the plaintiff the funds owed to him. It is well settled, however, that "[t]he fact that a contractual right is contingent on future events does not degrade that right to an expectancy." (Internal quotation marks omitted.) Id. We conclude, therefore, that the court properly characterized the plaintiff's interest in the LLC as distributable property for the purposes of § 46b-81.

B

We must next determine whether the court properly valued the plaintiff's interest in the LLC at $520,000. The plaintiff argues that the court improperly valued his interest in the LLC at $520,000 because his "profit had not been established by any sales contract for the property: at the time of trial, there was a verbal offer only, but there was no firm sales contract. The [plaintiff's] right to receive these funds, and indeed any profit from the sale of the Dearfield property, was completely speculative." The defendant argues that the court properly valued the plaintiff's interest in the LLC because it was entitled to rely on the plaintiff's financial affidavit, which stated that he was entitled to receive $520,000 from the proceeds of the sale of the Dearfield Lane property. We agree with the defendant.

"We begin our analysis by noting that a trial court has broad discretion in determining the value of property. In assessing the value of . . . property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." (Internal quotation marks omitted.) *Porter* v. *Porter*, 61 Conn. App. 791, 799–800, 769 A.2d 725 (2001).

In the present case, the parties did not proffer any expert testimony on the value of the plaintiff's interest in the LLC. Rather, the plaintiff offered evidence of value through his financial affidavit and his testimony. The plaintiff's financial affidavit estimated the selling price of the Dearfield Lane property at $3,200,000. It then listed all the mortgages, loans, and costs associated with the property that would have to be first satisfied after the property was sold. After subtracting those costs from the estimated sale price, the remaining proceeds from the sale were represented as $685,000. The amount of $520,000 was then listed as "Plaintiff due on land cost." Finally, the affidavit listed the profit from the sale as $165,500, including the plaintiff's share (90 percent) of $148,950.

The plaintiff's testimony on the final day of trial was consistent with his financial affidavit. He testified that an offer of $3,100,000 had been accepted for the Dearfield Lane property. Even though the offer was for $100,000 less than the estimated selling price in the affidavit, he would still receive the $520,000 payment from the LLC. The only difference was in the amount of profit he expected to receive—$58,000 instead of $148,950.

The court was entitled to rely on the plaintiff's financial affidavit and his trial testimony in determining the value of his enforceable interest in the LLC. See *Porter* v. *Porter*, supra, 61 Conn. App. 799–800 (trial court may consider claims of parties in assessing value of property); *Voloshin* v. *Voloshin*, 12 Conn. App. 626, 628, 533 A.2d 573 (1987) (trial court entitled to rely on sworn financial statements filed in dissolution actions). Both the plaintiff's financial affidavit and his testimony at trial indicated that he would receive at least $520,000 from the sale of the Dearfield Lane property. We therefore conclude that the court properly valued the plaintiff's interest in the LLC at $520,000.

II

The plaintiff next claims that the court improperly divided the marital estate between the parties. Specifically, he argues that "[t]he evidence shows that the entire marital estate was the result of [his] premarital property and his inheritance" and therefore the court abused its discretion in awarding the defendant the lump sum property settlement of $750,000. He also argues that the court improperly failed to consider his liabilities and the tax debt on the real property when it divided the marital estate. In response, the defendant argues that the court properly divided the marital estate because it considered all the relevant factors set forth in § 46b-81 (c). Additionally, the defendant responds that the court did not fail to consider the plaintiff's liabilities and the tax debt on the real property when it divided the marital estate. We agree with the defendant.

## A

The plaintiff argues that the court abused its discretion in awarding the defendant a lump sum property settlement of $750,000 because "[t]he evidence shows that the entire marital estate was the result of the [plaintiff's] premarital property and his inheritance." According to the plaintiff, the court improperly awarded the defendant "more than her equitable share of the property." We are not persuaded.

First we set forth our standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Citation omitted; internal quotation marks omitted.) *Quasius* v. *Quasius*, 87 Conn. App. 206, 208, 866 A.2d 606, cert. denied, 274 Conn. 901, 876 A.2d 12 (2005).

"Importantly, [a] fundamental principle in dissolution actions is that a trial court may exercise broad discretion in . . . dividing property as long as it considers all relevant statutory criteria. . . . While the trial court must consider the delineated statutory criteria [when allocating property], no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. . . . In dividing up property, the court must take many factors into account. . . . A trial court, however, need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Citations omitted; internal quotation marks omitted.) *Coleman* v. *Coleman*, 151 Conn. App. 613, 617, 95 A.3d 569 (2014).

The plaintiff concedes, correctly, that assets acquired by inheritance are not automatically awarded to the party who inherited them. See *Karen* v. *Parciak-Karen*, 40 Conn. App. 697, 704, 673 A.2d 581 (1996) (rejecting premise that trial court cannot assign one spouse's inherited property to other spouse). Rather, he argues that, in light of the fact that the marital estate consisted mostly of his inheritance, the court should have awarded him the majority of the assets without also ordering him to pay a lump sum property settlement to the defendant. Phrased differently, the plaintiff

argues that the court did not place enough weight on the fact that the plaintiff had inherited the majority of the marital estate. This argument is without merit.

The trial court has broad discretion in determining the amount of weight to be placed on each of the statutory criteria set forth in § 46b-81 for the division of marital property, as long as it considers each criterion. *Coleman* v. *Coleman*, supra, 151 Conn. App. 617. In the present case, the court stated twice in its memorandum of decision that it had considered all the statutory criteria set forth in § 46b-81. The court also stated that it had given particular consideration to "the length of the marriage, the ages of the parties, their health, their ability to support themselves, *the source of the assets*, and their respective prospects for the acquisition of assets in the future." (Emphasis added.) "[T]he law does not require the court to make express findings as to each of the statutory criteria . . . ." Id., 618. Accordingly, we conclude that the court acted within its discretion when it weighed the statutory criteria set forth in § 46b-81 and ordered the plaintiff to pay a lump sum property settlement of $750,000 to the defendant.

## B

We next address the plaintiff's argument that the court improperly failed to consider his liabilities and the tax debt on the real property when it divided the marital estate. Specifically, he argues that his financial affidavit showed $385,947 of liabilities that the court failed to take into account when making its financial orders. Additionally, he argues that the court "should have noted the true value of the marital estate by subtracting the tax liability from the value of the real property." We conclude that these arguments are without merit, as the court's memorandum of decision clearly reflects that, contrary to the plaintiff's assertions, the court *did* consider his liabilities and the tax debt on the real property.

In its memorandum of decision, the court acknowledged the plaintiff's liabilities as described in his financial affidavit. The court stated: "Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits . . . . In particular, the [plaintiff] shall be responsible for the outstanding state and federal tax liabilities." With respect to the tax liability on the real property, the court awarded all three real property assets to the plaintiff "subject to any existing indebtedness." We conclude, therefore, that the court did not fail to consider the plaintiff's liabilities and the tax debt on the real property and, accordingly, properly divided the marital estate between the parties.

## III

We now address the plaintiff's claim that the court improperly ordered him to make payments that

exceeded the amount of funds available to him. Specifically, he argues that the court abused its discretion in ordering him to pay the defendant $350,000 within sixty days of the date of the court's memorandum of decision and $100,000 within one year of that date, and $100,000 every year thereafter until the lump sum property settlement is paid in full. He also argues that the court abused its discretion in ordering him to pay the guardian ad litem $19,266 and the defendant's attorney $10,000 within thirty days of the date of the memorandum of decision, with another $10,000 to be paid to the defendant's attorney within sixty days of the date of the memorandum of decision. The plaintiff contends that there is no evidence in the record that he is capable of making these payments and that the court has ordered him "to undertake an act that he simply cannot perform."[4] In response, the defendant argues that the court did not err because it awarded the plaintiff assets valued at more than $2,500,000, which he could use to comply with the financial orders. We again agree with the defendant.

"With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . Our function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence and pleadings in the whole record. . . . In other words, judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 530–31, 752 A.2d 978 (1998).

The plaintiff relies on *Valentine* v. *Valentine*, 149 Conn. App. 799, 808, 90 A.3d 300 (2014), to support his position that the court abused its discretion in ordering him to make the disputed payments. In *Valentine*, this court held that the trial court abused its discretion in issuing "excessive" financial orders that left one party with "little to no income to sustain his basic welfare." Id. This court explained: "After determining that the defendant's net weekly income was $957.52, the court ordered him to make payments in excess of his financial capacity. It imposed a weekly obligation of $600 toward child support and alimony payments, and an additional $200 toward prior court orders until he satisfied the outstanding amount of $61,392. This $800 weekly sum *alone* constituted more than 80 percent of the defendant's net weekly income, and left him with a mere $157.52 to satisfy his weekly living expenses. . . .

"In addition to those weekly payments, moreover, the court ordered that the defendant was responsible for $13,250 of the plaintiff's trial attorney's fees and $928 for outstanding child support. What is more, it ordered him to maintain a $500,000 life insurance policy at his sole expense, to cover 62 percent of any uninsured medical expenses for the parties' two minor children, and to cover 50 percent of costs associated with their minor children's extracurricular activities. All of these payments are *in addition to* the court's order requiring the defendant to pay his own attorney's fees, costs, and trial expenses—not to mention his personal living expenses. Moreover, the court did not identify any valuable assets that the defendant could use to comply with its financial orders." (Citation omitted; emphasis in original.) Id., 807.

The plaintiff also relies on our Supreme Court's decision in *Greco* v. *Greco*, 275 Conn. 348, 362–63, 880 A.2d 872 (2005). In *Greco*, our Supreme Court held that the trial court's financial orders in a dissolution proceeding constituted an abuse of discretion because, "[u]nder the trial court's order, the defendant was forced to the brink of abject poverty by his obligations to pay the required alimony and insurance premiums, and then stripped of any means with which to pay them by the disproportionate division of the marital assets." Id., 363.

In the present case, the court found that the plaintiff's net weekly income was $1659, which included income from his employment as a realtor and also from his family trust. The plaintiff asserts that, after accounting for all of the court's other financial orders, including alimony, child support, and health insurance and extracurricular activities for the children, his monthly income is $3887. This amount, he argues, is insufficient to allow him to comply with the disputed financial orders and meet all his personal expenses. The plaintiff's income, however, is not his only source of funds. We conclude that this case is distinguishable from *Valentine* and *Greco* because, here, the court identified valuable assets from the marital estate and awarded them to the plaintiff, giving him the means both to comply with the disputed financial orders and sustain his basic welfare. See *Valentine* v. *Valentine*, supra, 149 Conn. App. 807–808.

The court ordered the plaintiff to make various payments to the defendant, the defendant's attorney, and the guardian ad litem in the total amount of approximately $790,000, and approximately $390,000 of that amount had to be paid within sixty days of the date of the memorandum of decision. In dividing the marital estate, the court awarded the plaintiff the marital home at 8 Grove Lane, which was valued at $1,650,000 and was not encumbered by a mortgage. The court also awarded the plaintiff his interest in Unit 6B at 47 Lafayette Place, which was valued at $304,250 and was

similarly unencumbered. Additionally, the plaintiff retained his interest in the promissory note from Snowball, valued at $150,000. Finally, the court awarded the plaintiff his interest in the LLC valued at $520,000. Taken together, these assets were more than adequate to allow the plaintiff to comply with the court's financial orders and to meet his personal expenses. We also note that the equity in the 8 Grove Lane property alone was sufficient to permit the plaintiff to make the disputed payments in a timely manner.[5]

The plaintiff argues in his brief that "[t]here is no finding or order that the [plaintiff] is to sell the 8 Grove Lane property; rather, the property is awarded to the [plaintiff], free and clear of any claim of the [defendant], and subject to any indebtedness. There is no finding that the [plaintiff] can sell his share of Unit 6B; indeed, he can't, because he is a co-owner with Dr. Snowball . . . . There is no finding that the [plaintiff] can collect the remainder of the note from Dr. Snowball other than the monthly payments received." Essentially, the plaintiff claims that, because the trial court did not specifically order him to sell or mortgage the assets awarded to him, or to take any other steps necessary to access the equity in them, those assets are somehow immune and this court cannot consider them in determining whether he is capable of making the disputed payments. We reject this claim.

The trial court is not required to establish a plan for the plaintiff that details the steps he must take in order to comply with the court's financial orders. As long as the court provided the plaintiff with the means to comply with its orders, we cannot say that the court abused its discretion. Here, the court ordered the plaintiff to make payments of approximately $790,000 and awarded him in excess of $2,500,000 in assets. The fact that those assets were awarded to the plaintiff does not preclude the possibility that he will have to use a portion of them to comply with the court's other financial orders.

The court provided the plaintiff with sufficient assets to enable him to make the disputed payments in a timely manner. It is the plaintiff's responsibility to determine how he will do so. We conclude that the court did not abuse its discretion in ordering the plaintiff to pay the lump sum property settlement, a portion of the defendant's attorney's fees, and a portion of the guardian ad litem's fees within the time frame established by the court.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On August 12, 2014, after the plaintiff filed the present appeal, the court issued a clarification to its original memorandum of decision in order to clarify and amend its factual findings regarding the Dearfield Lane property. In its clarification, the court stated: "During the course of the post-judgment appellate process, it came to the court's attention that there is an inconsistency in the Memorandum of Decision between the court's reiteration of the facts of the case and its findings, which merits clarification and/or

correction so that the Appellate Court and the parties have a clearer idea of the basis for the trial court's decision." We have cited to the court's amended findings in this opinion.

The plaintiff argues that we must remand the case for reconsideration of the financial orders, regardless of the court's clarification, because the court's original findings of fact with respect to the Dearfield Lane property were clearly erroneous and thus undermined the financial orders. The court initially stated in its memorandum of decision that "the [plaintiff] is entitled to a minimum of $520,000 from the sale of the Dearfield [Lane] property." The plaintiff argues that this finding is clearly erroneous because the court did not take into account the fact that he was only entitled to that amount after all liens, mortgages, and costs associated with the property were paid in full. We do not agree. As discussed in part I B of this opinion, the plaintiff's financial affidavit and his testimony at trial established that, *after* accounting for the liens, mortgages, and other costs associated with the property, he expected to receive $520,000 from the sale of the Dearfield Lane property. The court's clarification was not, as the plaintiff asserts, an admission that the court erred. Rather, the court amended its findings to more accurately reflect the plaintiff's agreement with Barile.

[2] In total, the assets awarded to the plaintiff were valued at $2,624,250. Excluding the Dearfield Lane property, the assets were valued at $2,104,250.

[3] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage . . . the Superior Court may assign to either spouse all or any part of the estate of the other spouse. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[4] In this claim, the plaintiff only challenges the timing of the payments; he does not challenge the amount that the court ordered him to pay.

[5] The court, in finding that the Grove Lane property was worth $1,650,000, relied on the plaintiff's financial affidavit. The plaintiff also testified that the property was not subject to a mortgage. Accordingly, the value of the property surely could sustain a mortgage sufficient for the plaintiff to make the challenged payments.

———————————————